L. SINGER & SONS ET AL. *v.* UNION PACIFIC RAILROAD CO.*

No. 34.  Argued November 14, 15, 1940.—Decided December 16, 1940.

---

*Together with No. 35, *Kansas City, Missouri,* v. *L. Singer & Sons et al.,* also on writ of certiorari, 309 U. S. 653, to the Circuit Court of Appeals for the Eighth Circuit.

Mr. *Ruby D. Garrett*, with whom *Messrs. John M. Cleary* and *Fred Ruark* were on the brief, for petitioners in No. 34.

Mr. *William E. Kemp*, with whom *Mr. John M. Cleary* was on the brief, for petitioner in No. 35.

Mr. *Henry N. Ess*, in No. 34, and *Mr. Thomas W. Bockes*, in No. 35, with both of whom *Mr. A. C. Spencer* was on the briefs, for the Union Pacific Railroad Company, respondent.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Undertaking to proceed under Paragraphs 18, 20 and 21, § 402, Transportation Act, 1920[1] (41 Stat. 456, 477, U. S. C. Title 49, § 1) petitioners, by bill filed December 30, 1938, in the United States District Court, Western District of Missouri, asked a decree enjoining respondent from constructing or operating an alleged extension. 26 F. Supp. 721.

---

[1] Transportation Act, 1920, § 402:

"Paragraph '(18) . . . no carrier by railroad subject to this Act shall undertake the extension of its line of railroad , . . unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction . . . of such . . . extended line . . .' Paragraph '(19) The application for and issuance of any such certificate shall be under such rules and regulations as to hearings and other matters as the Commission may from time to time prescribe, . . .' Paragraph '(20) . . . Any construction . . . contrary to the provisions . . . of paragraph (18) . . . may be enjoined by any court of competent jurisdiction at the suit of the United States, the Commission, any commission or regulating body of the State or States affected, or any party in interest. . . .'"

The bill describes them thus:—

"Plaintiffs are engaged in the business of buying and selling at wholesale and retail, fruits, vegetables and other food products within and adjacent to the so-called City Market of Kansas City, Missouri, located at and near the intersection of Fourth and Walnut Streets in said City, or are directly interested in or connected with said business. Said market has been in existence at said location for more than seventy-five years serving greater Kansas City and vicinity as a wholesale and retail produce market, and also serving numerous territories in other states to and from which perishable and other produce bought and sold in said market is transported. The City of Kansas City, Missouri, is now engaged in the construction of new wholesale and retail market buildings and facilities in said vicinity at a cost of approximately $500,000.00. Said market is now and for a long period of time has been served by existing transportation facilities of various trunk line railroads, and said existing transportation facilities are suitable, convenient and adequate to meet the requirements of the market. The market is easily accessible to its customers through the facilities of said railroads and also by the use of streets and hard-surfaced highways radiating in every direction therefrom."

Answering, the respondent alleged that petitioners were not parties "in interest" within Paragraph 20, § 402, Transportation Act and had no right to sue. The District Court sustained this defense and dismissed the bill. 26 F. Supp. 721. Upon appeal its action was affirmed. 109 F. 2d 493. The matter is here by certiorari.

The Circuit Court of Appeals made the following summation of the bill—

"The complaint of the plaintiffs shows that they are commission merchants doing business on the Kansas City, Missouri, produce market, an old and well-estab-

lished market which adequately serves the consuming public in its vicinity and receives produce from, and ships produce to, other states; that Kansas City, Missouri, is now engaged in constructing new market buildings for this market at a cost of about $500,000; that the market has suitable and adequate transportation facilities of all kinds; that the adjoining city of Kansas City, Kansas, proposes to build and is building a 'Food Terminal' or produce market on a tract of land which it owns, at a cost of about $4,000,000, of which $1,710,000 is a grant from the Public Works Administration of the United States, and that the balance of the necessary funds will be procured by a sale of the City's bonds to the defendant railroad company; that the defendant proposes, at an expense of some $500,000, to furnish trackage to serve this Kansas City, Kansas, market; that this trackage constitutes an extension of the defendant's lines of railroad, for the construction of which it has procured no certificate of convenience and necessity from the Interstate Commerce Commission as required by law; that the construction and operation of the proposed extension in Kansas City, Kansas, will adversely affect and will destroy the business and properties of the plaintiffs and the large investments which they have made in and adjacent to the Kansas City, Missouri, produce market; that it will create an unnecessary and uncalled for rival market at an inconvenient place without creating any more produce to be handled or any more customers to be served; that it will result in the unnecessary duplication of railroad facilities at a cost of $500,000 without increasing the amount of freight to be handled; that it will divert traffic from other railroads which are now adequately handling the traffic to the Kansas City, Missouri, produce market, and will cause destructive competition between the defendant and other railroads and will cause a wasteful and needless expendi-

ture of money by the defendant; that 'for each and all of the reasons aforesaid, the construction and operation, or the construction, or the operation of the said extension or extensions of railroad by the defendant to said proposed produce market in Kansas City, Kansas, will directly and adversely affect the property interests of the plaintiffs and the public generally by bringing about a material change in the transportation situation, and will constitute an unnecessary burden upon interstate commerce directly and adversely affecting the welfare of plaintiffs and the public interest.' " 109 F. 2d 493.

It is not alleged that the respondent has ever served the produce market in Kansas City, Missouri, or that petitioners make or receive shipments over its lines or that the proposed extension will deprive them of any shipping facilities. Evidently the real purpose was to obstruct construction of a competitor and the theory upon which the proceeding rests would permit petitioners to sue if any railroad should extend its lines to any market competing with the market at Kansas City, Missouri.

Concerning the purport of the allegations of the bill, the Circuit Court of Appeals rightly said:

"It is obvious that the only basis for the plaintiffs' claim that the alleged extension of the lines of the defendant to the Kansas City, Kansas, market will particularly injure them is that they do business upon the Kansas City, Missouri, market, and that if the proposed rival market in Kansas City, Kansas, functions, it will divert business from the market upon which they operate and will thus hurt them, their business, and their investments in Kansas City, Missouri, and that, since the proposed extension of its tracks by the defendant is necessary to enable the rival market to function, such extension will therefore injure the plaintiffs. It seems equally obvious that, except for the fact that the pro-

posed extension is essential to the operation of the rival market in Kansas, it could not possibly have any direct or immediate effect upon the plaintiffs, their property or their business in Missouri, other than the effect which a wasteful expenditure by the defendant of its money would have upon the public generally. The proximate cause of the injury to the plaintiffs will be the competition created by the construction and operation of the rival market, and not the construction or operation of the transportation facilities furnished to it by the defendant or by others engaged in the transportation business."

It declared that the question whether petitioners were "parties in interest" within Paragraph 20 must be determined upon consideration of *Western Pacific R. Co.* v. *Southern Pacific Co.,* 284 U. S. 47, and concluded—

"The plaintiffs have no definite legal right which is threatened. They are, however, persons whose welfare may be adversely affected by the bringing about of a material change in the transportation situation, in the sense that the extension proposed by the defendant, if built and operated, will enable a competitive market to function to their detriment. In that sense, we think it may safely be said that the proposed extension of defendant's lines may adversely affect the plaintiffs' welfare. We are of the opinion, however, that their complaint discloses that their welfare cannot be directly, but only indirectly and consequentially, affected by the proposed extension. They are not in competition with the defendant. They are not engaged in the transportation business. Their only peculiar interest in that business is in the effect which changes in it may have upon the market where they do business and upon rival markets now or hereafter established in the territory which the plaintiffs serve. . . . We conclude that the statute is not to be so liberally construed as to enable

those who fear adverse effects upon their business from the establishment of competitive enterprises requiring transportation facilities, to maintain suits to enjoin railroads from constructing what are claimed to be unauthorized extensions to serve such enterprises."

A dissenting opinion by Judge Stone likewise relied upon *Western Pacific R. Co.* v. *Southern Pacific Co.*, but took the view that the challenged action might directly and substantially affect petitioners' welfare -since their financial interests would suffer from the proposed rival market which could not come into existence without the proposed extension.

The purpose and effect of Paragraphs 18, 20 and 21 were much considered in *Texas & Pacific Ry. Co.* v. *Gulf, C. & S. F. Ry. Co.*, 270 U. S. 266 and *Western Pacific R. Co.* v. *Southern Pacific Co.*, 284 U. S. 47.

In the first of these causes a railroad sought to prevent another from building an extension. The meaning of the term "party in interest" was not discussed. But the opinion asserts that by the Transportation Act of 1920, "Congress undertook to develop and maintain, for the people of the United States, an adequate railway system. It recognized that preservation of the earning capacity, and conservation of the financial resources, of individual carriers is a matter of national concern; that the property employed must be permitted to earn a reasonable return; that the building of unnecessary lines involves a waste of resources and that the burden of this waste may fall upon the public; that competition between carriers may result in harm to the public as well as in benefit; and that when a railroad inflicts injury upon its rival, it may be the public which ultimately bears the loss."

Also "the prohibition of Paragraph 18 is absolute. If the proposed track is an extension and no certificate has.

been obtained, the party in interest opposing construction is entitled as of right to an injunction."

In the second cause it was claimed that the Western Pacific was not "a party in interest" within the statute. The Circuit Court of Appeals accepted that view, 46 F. 2d 729; we concluded otherwise but did not undertake to announce an inclusive and exclusive definition of the term. The circumstances disclosed a special interest in that complainant with probability of direct loss from what the defendant—not another—proposed to do. The portion of the opinion, presently specially important, follows—

"If, as the court below seems to have assumed, a 'party in interest' must possess some clear legal right for which it might ask protection under the rules commonly accepted by courts of equity, the paragraphs under consideration would not materially aid the Congressional plan for promoting transportation. On the other hand, there was no purpose to permit any individual so inclined to institute such a proceeding. The complainant must possess something more than a common concern for obedience to law. See *Massachusetts* v. *Mellon*, 262 U. S. 447, 488. It will suffice, we think, if the bill discloses that some definite legal right possessed by complainant is seriously threatened or that the unauthorized and therefore unlawful action of the defendant carrier may directly and adversely affect the complainant's welfare by bringing about some material change in the transportation situation."

The Transportation Act, 1920, was designed to protect the public against action which might endanger its interest. In order to aid that general purpose, Paragraph 20, § 402, provides that suit for an injunction may be instituted by the United States, the Commission (I. C. C.), any Commission or Regulative Body of the state or states affected, or any "party in interest." Such

a suit cannot be instituted by an individual unless he "possesses something more than a common concern for obedience to law." The general or common interest finds protection in, the permission to sue granted to public authorities. An individual may have some special and peculiar interest which may be directly and materially affected by alleged unlawful action. See *Detroit & M. Ry. Co.* v. *Boyne City, G. & A. R. Co.*, 286 F. 540. If such circumstances are shown he may sue; he is then "party in interest" within the meaning of the statute. In the absence of these circumstances he is not such a party.

We cannot think Congress supposed that the development and maintenance of an adequate railway system would be aided by permitting any person engaged in business within or adjacent to a public market to demand an injunction against a carrier seeking only to serve a competing market by means of an extension not authorized by the Interstate Commerce Commission.

The right to sue under the statute is individual. Petitioners are not helped by uniting.

The Circuit Court of Appeals after reviewing all the facts reached the conclusion that the welfare of petitioners could only be indirectly and consequentially affected by the proposed extension; that their interest in the transportation situation "is in the effect which changes in it may have upon the market where they do business and upon rival markets now or hereafter established in the territory which the plaintiffs serve." It held this was not enough. We agree. A mere extension to the plant of a competitor which in no other way affects the complaining parties in no proper sense brings about a material change in the transportation system directly affecting their peculiar interest which they have the right to prevent by suit.

The challenged judgment must be affirmed.

### No. 35.

The City of Kansas City, Missouri, sought to intervene in No. 34. The District Court denied its motion. The Circuit Court of Appeals affirmed. In view of what we have decided in No. 34 this denial necessarily must be affirmed.

*Affirmed.*

MR. JUSTICE FRANKFURTER:

I quite agree with my Brother STONE that unfair loss may be cast upon a community by the unjustified extension of a railroad line, and that such loss is one consequence of the evils of unregulated railroad building which the Transportation Act was intended to check. But our immediate problem is to determine how a community can challenge such a proposed improper extension. Can a city, in other words, come into a Federal Court and urge its special relation to an alleged violation of § 1 (18–22), of the Transportation Act, 1920, 41 Stat. 456, 477, 49 U. S. C. § 1 (18–22)? The answer, of course, depends on the scheme of enforcement that Congress has devised for the Act. After making administrative provisions for securing a certificate from the Interstate Commerce Commission as a prerequisite to the construction of an "extension," the Act subjects any construction in violation of its licensing system to an injunction "at the suit of the United States, the Commission, any commission or regulating body of the State or States affected, or any party in interest." § 1 (20).

A city deeming itself adversely affected by a proposed illegal extension would naturally turn to its state commission to assert its interests. If, for any reason, the state agency does not employ its power under § 1 (20) on behalf of the city's claims, the latter can invoke the law-enforcing authority of the Interstate Commerce Commission and also enlist the power of the Attorney General to initiate litigation. It is reading § 1 (20)

without illumination of the scheme and purposes of the
Transportation Act to expand the categories of public
agencies explicitly named by Congress for enforcing
§ 1 (18) by including a city as a "party in interest."
To do so would disregard recognition of a state utility
commission as the special repository of all the interests
of a state in this particular field, and of the Interstate
Commerce Commission as the national organ for enforc-
ing the body of interstate commerce acts. Clearly, there-
fore, Kansas City can not be deemed a "party in inter-
est" for the litigious purposes of that phrase in § 1 (20).

But it would indeed be strange to find that while the
city was not given power to resort to a court, a private
and more limited sufferer from the same economic threat
may have such legal standing. Such a paradox exposes
the appropriate scope of "party in interest" in § 1 (20).
The guiding considerations in the application of that
section are to be found in the reach of the functions of
the Interstate Commerce Commission and of its state
analogues. They are relied on for the enforcement of
railroad legislation neither grudgingly nor with scepti-
cism. In these agencies are lodged the resources for com-
pounding the manifold ingredients of "the public
interest." To entrust the vindication of this public in-
terest to a private litigant professing a special stake in
the public interest is to impinge on the responsibility of
the public authorities designated by Congress. If there
be insufficient assurance that unlawful railroad construc-
tion will be resisted by a state commission representing
all the interests of a state that are affected, the Inter-
state Commerce Commission may be moved to enjoin
illegality.

Who then is a "party in interest"? As a part of the
very system through which the national policy is to be
achieved, a railroad has been deemed by this Court a
"party in interest" to effectuate the railroad policy intro-

duced by the licensing system of the Transportation Act. *Texas & Pacific Ry. Co.* v. *Gulf, C. & S. F. Ry. Co.,* 270 U. S. 266, 277; *Western Pacific R. Co.* v. *Southern Pacific Co.,* 284 U. S. 47. And one who in a proceeding initiated before the Interstate Commerce Commission has been treated by it as a party to the litigation, cf. Los Angeles Passenger Terminal Cases, 100 I. C. C. 421; 142 I. C. C. 489; *Atchison, T. & S. F. Ry. Co.* v. *Railroad Commission,* 283 U. S. 380, 393–94, may perhaps be deemed a "party in interest" in the further pursuit of claims before a court after adverse action by the Commission. Compare *Interstate Commerce Comm'n* v. *Oregon-Washington R. Co.,* 288 U. S. 14, and *Federal Communications Commission* v. *Sanders Bros. Radio Station,* 309 U. S. 470. But to allow any private interest to thresh out the complicated questions that arise out of § 1 (18–22)[1]—as, for instance, whether a proposed construction is an "extension" or a "spur," compare *Texas & Pacific Ry. Co.* v. *Gulf, C. & S. F. Ry. Co.,* 270 U. S. 266—is to invite dislocation of the scheme which Congress has devised for the expert conduct of the litigation of such issues.[2] It also would put upon the district courts the task of drawing fine lines in determining when a private claim is so special that it may be set apart from the general public interest and give the claimant power to litigate a public controversy. These inquiries are so harassing and unprofitable as to be avoided, unless Congress has explicitly cast the duty upon the courts. Against any such implication, in the absence of rather plain language, the whole course of

[1] The fact that, in order to raise the bare legal question of petitioner's right to sue, the illegality of the proposed extension was conceded by the pleadings, does not touch the force of the argument.

[2] With reference to the present circumstances themselves, the Attorney General, at the request of the Interstate Commerce Commission, has chosen a different remedy to protect the public interest. See *United States* v. *Union Pacific R. Co.,* 32 F. Supp. 917.

federal railroad legislation and the relation of the Interstate Commerce Commission to it admonishes. The interests of merely private concerns are amply protected even though they must be channelled through the Attorney General or the Interstate Commerce Commission or a state commission.

Therefore, the court below made proper dispositions of these cases.

MR. JUSTICE ROBERTS, MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, and MR. JUSTICE MURPHY, having concurred in the Court's opinion, also join in these views.

MR. JUSTICE STONE:

I think that the complainants, petitioners in No. 34, are proper parties to maintain this suit, that the decree should be reversed and, on the remand, the petition of Kansas City for intervention should be considered in light of that conclusion and of §§ 212 and 213 of the Judicial Code, 28 U. S. C. § 45a and of Rule 24 of the Rules of Civil Procedure.

On the pleadings it stands conceded that the proposed extension of respondent's line is unauthorized and unlawful, and the sole question we have to decide is whether the interest of petitioners in maintaining this suit, as disclosed by their pleadings, satisfies the requirement of the statute which authorizes it to be brought by "any party in interest."

Section 1 (18) of the Transportation Act of 1920, 41 Stat. 474, 477, 49 U. S. C. § 1 (18), forbids the extension of its line by a railroad without a certificate of the Interstate Commerce Commission that "the present or future public convenience and necessity require or will require" the construction of the extension. Similarly it prohibits the abandonment of any portion of a line of railroad without a like certificate permitting the abandon-

ment. Section 1 (19) requires the Commission to give notice of application for a certificate to the governor of the state in which the proposed extension is to be constructed and to publish the notice in each county through which the line of railroad is constructed or operated. By § 1 (20) the Commission is authorized to attach to its certificate such "conditions as in its judgment the public convenience and necessity may require," and authorizes any court of competent jurisdiction to enjoin the prohibited construction or abandonment "at the suit of the United States, the Commission, any commission or regulating body of the state or states affected, or any party in interest; . . ." By § 1 (22) spur, industrial, side tracks and the like are excluded from the authority of the Commission and the railroad may build them without applying for a certificate.

The interest of petitioners in maintaining the suit as shown by the pleadings is derived from the injury to the public which, it is specifically alleged, will result from the proposed extension through the injury to the community in Kansas City, Missouri, and vicinity, of which community petitioners are a part and in which they are property owners, and the consequent injury alleged to affect them individually. The public injury, it is alleged, will be caused by (a) the loss or serious impairment in utility of the Kansas City public produce market and the destruction or serious diminution of values of property and business and of financial investments in and about the market, which will be brought about by the extension, through the creation of a rival market and the diversion of traffic to it at a point in Kansas City, Kansas, far removed from the center of population of Kansas City, Missouri, and to the inconvenience of the great majority of the citizens of both cities who are served by the existing market, which is adequate to the needs of the community; (b) by the

unnecessary duplication of railroad facilities in the Kansas City district at large cost, with wasteful and needless expenditures by respondent and no increase in freight to be handled; and (c) by the diversion of traffic to respondent railroad from other railroads and destructive competition between the railroads operating in the vicinity.

Special injury is shown to complainants (petitioners in No. 34) by the allegations that they are owners of business property and investments in the existing market area and vicinity, and that their property will be reduced in value in consequence of the diversion of traffic to the rival market. The petitioner, Kansas City, Missouri, in intervention, in No. 35, alleges the like injury to the public which it represents and sets up specifically the threatened loss in value and utility of a large public market structure which it is now building at great cost, and the threatened loss to it of taxes through diminution in property values in the city.

The statute does not define the "parties in interest" whom it permits to sue to restrain an unauthorized extension. It cannot be assumed that the phrase is meaningless or that the statute should be read as though the words were omitted. Obviously the parties intended must have, as do petitioners, an interest in the outcome of the litigation other than the "common concern for obedience to law." See *Massachusetts* v. *Mellon*, 262 U. S. 447, 488. And as the language of the statute plainly indicates, and as we have held, they may be, as are petitioners, others than the public bodies named in the statute as appropriate plaintiffs. *Atchison, T. & S. F. Ry. Co.* v. *Railroad Commission*, 283 U. S. 380, 393, 394. And they may maintain the suit although the injury which they allege is not strictly an actionable wrong independently of the paragraphs in question.

*Western Pacific R. Co.* v. *Southern Pacific Co.*, 284 U. S. 47.

The statute draws no distinction between direct and indirect injury as the test of plaintiff's interest. Nor is any reason advanced for saying that his interest is more significant because the injury which he suffers is labeled "direct" rather than "indirect." In any case, that suffered by petitioners does not seem to be any the less direct than that which an extension may inflict upon a competing railroad which admittedly may sue to enjoin it. *Western Pacific R. Co.* v. *Southern Pacific Co.*, *supra;* cf. *Claiborne-Annapolis Ferry Co.* v. *United States*, 285 U. S. 382. If the statute imposes any requirements other than those indicated by the phrase "party in interest," they must be implied from the purposes of the statute, its context, and from the reasons for permitting others than the public bodies named in it to bring the suit. Cf. *New York Central Securities Co.* v. *United States*, 287 U. S. 12, 24. On the other hand if maintenance of the present suit by petitioners is consistent with those purposes and aids them and is in harmony with the reasons for allowing any party in interest to sue, the conclusion would seem inescapable that petitioners are proper plaintiffs.

It is not denied that the statutory language and the legislative history of the paragraphs in question require consideration by the Commission of the interests of cities, towns and communities which are adversely affected by a proposed extension of a line of railroad, in order to determine whether "public convenience and necessity" require the extension. The phrase "public convenience and necessity" has long been used to signify the final result of the balancing of the consequences which flow from the proposed action to all those matters of public concern which are affected by it. Cf. *Chesa-*

*peake & Ohio Ry. Co.* v. *United States,* 283 U. S. 35, 42; *United States* v. *Lowden,* 308 U. S. 225. And we have held that in the administration of the cognate provision relating to abandonment of railroad lines the Commission must consider as a part of the public convenience and necessity the interests of local communities affected by the proposed abandonment. *Colorado* v. *United States,* 271 U. S. 153, 168. A community may suffer injury through the loss of railroad service and diversion of traffic resulting from the construction and operation of a railroad extension without any compensating public advantage which is comparable in kind and amount with injury sustained by the abandonment of a line of railroad. One as well as the other should receive the consideration of the Commission in determining whether it should grant or withhold a certificate. Such appears to be its settled practice on applications for a certificate authorizing extension.[1]

---

[1] See Aroostook Valley R. Co., Construction, 105 I. C. C. 643; Minnesota Western R. Co., Construction, 111 I. C. C. 377; Northern Oklahoma Rys., Construction, 111 I. C. C. 765; Construction of Piedmont & Northern Ry. Co., 138 I. C. C. 363; Western Pacific California R. Co., 162 I. C. C. 5. And in balancing the public conveniences and necessities involved, that is to say the public interest in an adequate transportation system and the public interest in protecting local communities from undue injury from extensions of relatively small transportation importance, the Commission has sometimes found the injury to existing community interests persuasive ground for refusing the certificate. Construction by Aroostook Valley R. Co., *supra;* Construction by Minnesota Western R. Co., *supra.*

The broad scope of the Commission's inquiry is evidenced by the questionnaire which applicants for an extension must answer. Among the data required is the nature of the population, the territory, the industries involved, the names and character of towns near to but not served by the extension. See *In the matter of Applications under Paragraphs (18) and (21), Inclusive, Section 1, of the Interstate Commerce Act for Certificates of Public Convenience and Necessity for the Construction or Extension of Lines of Railroad,*

It is plain that the purpose of the statute is the protection of the public interest and that in the administration of its provisions by the Commission public interest is of paramount concern. That interest is primarily that railroad extensions, as the statute provides, shall not be built or operated without receiving the approval of the Commission, and that the Commission shall grant its permission only if the public convenience and necessity so require.

In determining who may bring the suit to restrain the proposed construction as provided by § 1 (20), it is significant that the suit is brought to restrain an act which the statute declares unlawful, the construction of an extension without the certificate of the Commission, § 1 (18), and that the function of the court is not that of the Commission in granting or withholding a certificate. The only issue which can be litigated in such a suit, brought by a proper plaintiff, is whether in fact the proposed construction is of a spur or sidetrack, the only new trackage which a railroad may lawfully build without recourse to the Commission. It is an issue which is by paragraphs (18) and (22) of § 1 made a judicial, not an administrative question and involves no more complexities of litigation than many other cases which courts are called on daily to decide. In any case the issue is one which Congress directed to be litigated in a suit brought under § 1 (20), and its complexity is unaffected by the particular plaintiff who brings the suit.

If the proposed construction is an extension the injunction must issue as of right, but its only effect is to compel the railroad before proceeding further to apply to the Commission for a certificate of public convenience and necessity which is the public purpose of the Act.

January 22, 1924. III-A Sharfman, The Interstate Commerce Commission, 333–335, 351.

*Texas & Pacific Ry. Co.* v. *Gulf, C. & S. F. Ry. Co.,* 270 U. S. 266, 273. The court is thus called on to decide no administrative issue which must be submitted to the Commission in advance of suit, and any decree which it may render involves no embarrassment to the Commission or otherwise in the administration of the Act. While the Commission itself may bring the suit, it is under no statutory duty to do so and its only other authority in the premises is to grant or withhold the certificate when applied for. One injured by an unauthorized extension and opposed to its construction, whether a state commission, a competing railroad or any other injured party, is not authorized to initiate any proceeding before the Commission and its only protection as of right from the consequences of the threatened public wrong is that afforded by suit authorized by § 1 (20). See *Texas & Pacific Ry. Co.* v. *Gulf, C. & S. F. Ry. Co., supra,* 272–274.

In considering the scope of the application of the statute this Court has recognized that the public interest which the Commission is to protect includes the public interest in the maintenance of an adequate transportation system and that a railroad whose welfare, although not its legal right, is adversely affected by an unauthorized and therefore unlawful extension of the line of another is a "party in interest" entitled to maintain suit to enjoin the extension. *Western Pacific R. Co.* v. *Southern Pacific Co., supra;* cf. *Claiborne-Annapolis Ferry Co.* v. *United States, supra.* And it has held that one other than a carrier (a municipality), who has "a proper interest in the subject matter," may institute a proceeding before the Interstate Commerce Commission under § 1, paragraphs 18 to 22, to obtain a certificate of public convenience, so as to enable a railroad to build an extension to a new station which a state commission has ordered it to build. *Atchison, T. & S. F. Ry. Co.* v.

*Railroad Commission, supra,* 393, 394. Compare *Detroit & M. Ry. Co.* v. *Boyne City, G. & A. R. Co.,* 286 F. 540.

But it has never held, unless it has done so now, that the public concern in protecting large communities from destruction of their business and financial interests by diversion of traffic to rival communities by railroad extensions, is not included in that public convenience and necessity which the Commission must consider in granting or withholding a certificate; or that one not a railroad who is a member of a community adversely affected and whose own business or property interests are so adversely affected is not a "party in interest" within the meaning of the statute.

If the statute permits some protection through commission action of the public interest in the preservation of communities adversely affected by the construction of railroad extensions, no plausible reason has been advanced for saying that an individual member of such a community whose property or financial interests are adversely affected by the proposed unauthorized extension, and who would be a proper party to the proceeding before the Commission on application for a certificate,[2]

---

[2] It is settled policy of the Interstate Commerce Act and related statutes to permit shippers, cities, commercial organizations and other interested parties to participate in proceedings before the Commission and in those before the courts where the application of the statute is involved. Section 9, 24 Stat. 382, 49 U. S. C. § 9, permits any person "claiming to be damaged" by a carrier to make complaint to the Commission or to bring suit in a district court. Communities, shippers and associations may make complaint to the Commission under § 13 (1), 49 U. S. C. § 13 (1), 24 Stat. 383 as amended, 36 Stat. 550. See, *United States* v. *Merchants & Manufacturers Traffic Assn.,* 242 U. S. 178. Section 42 provides that in actions to stop rebates and concessions "all persons interested in or affected by the rate or regulation or practice" may be made parties. Sections 212 and 213 of the Judicial Code, 28 U. S. C. § 45a, provide that "communities, associations, corporations, firms and individuals who are

is not a party in interest, entitled to bring suit quite as much as a competing railroad whose property interests are likewise affected. On the contrary, petitioners have a special and peculiar interest in preventing the unlawful extension and in securing, before the extension is built, such consideration of the community interest as the Commission gives, and which can be insured only by resort to the suit authorized by § 1 (20).

True, the statute is concerned with the protection of the public interest but in order that the public interest might not suffer, and that private injury might not be inflicted through a public wrong, the construction of an unlawful extension, Congress did not restrict the authority to bring suit to public agencies—the United States, the Commission or state commissions. Congress by providing that applications for certificates of convenience need not be made for local spur or side tracks, recognized that such constructions are too trivial to require a proceeding before the Commission. Instead it gave authority to bring the suit to private parties in interest, who because of the injury especially inflicted upon them through the adverse effect of the unlawful extension on the public, have a peculiar incentive to protect the public interest with which the statute is concerned, see *Federal Communications Comm'n* v. *Sanders Bros. Radio Station,* 309 U. S. 470, 477, and who by restraining an unauthorized "extension" insure the expert consideration by the Commission in the situation in which Congress required it.

Just as Congress gave authority to a railroad to sue to enjoin an unauthorized extension by its competitor in order to effect the railroad policy of the Act, it gave like authority to complainants to effect its public policy with respect to a community injuriously affected by an

interested in the controversy or question" before the Commission or in any suit which may be brought under the Act may intervene.

unlawful railroad extension. The statute gives no warrant for saying that the one may bring suit but that the other can only ask some public body to bring it; and neither interferes with the functions which the Commission is authorized to perform and which, as we have seen, are distinct from those assigned to the court by § 1 (20).

Maintenance of the suit by complainants is thus within the fair meaning of the words of the statute. It aids rather than obstructs the administration of the Act; it effectuates the public policy of the Act and is within the reason for permitting others than public agencies to bring the suit. They are "parties in interest" to which the statute refers.

Since the suit was properly brought the district court should entertain and decide the petition of Kansas City for intervention in the light of 28 U. S. C. § 45a and Rule 24 of the Rules of Civil Procedure.

The CHIEF JUSTICE and MR. JUSTICE REED concur in this opinion.