TUBE REDUCING CORPORATION, PROSECUTOR–RESPOND-
    ENT, v. UNEMPLOYMENT COMPENSATION COMMISSION
    OF THE STATE OF NEW JERSEY ET AL., DEFENDANTS–
    RESPONDENTS, AND VITO J. CARLUCCI, DEFENDANT–
    APPELLANT.

Argued October 18, 1948—Decided December 6, 1948.

178

*Mr. Abraham L. Friedman* argued the cause for defendant-appellant (*Mr. Samuel L. Rothbard* and *Mr. Emil Oxfeld,* on the brief; *Messrs. Rothbard, Harris & Oxfeld,* attorneys).

*Mr. Horace F. Banta* argued the cause for prosecutor-respondent Tube Reducing Corporation (*Messrs. Winne & Banta,* attorneys).

*Mr. Clarence F. McGovern* argued the cause for defendant-respondent Board of Review.

*Mr. Herman D. Ringle* argued the cause for respondent Unemployment Compensation Commission (*Mr. Charles A. Malloy* on the brief).

The opinion of the court was delivered by

HEHER, J. We concur in the judgment of the former Supreme Court and, generally, in the reasoning of the deliverance of Mr. Justice Colie for the court.

The court found as a fact that there was "a stoppage of work * * * because of a labor dispute" at the respondent employer's plant, where Carlucci was employed, and that he "was 'participating in * * * the labor dispute,'" and was therefore ineligible for benefits under the Unemployment Compensation Act *(R. S.* 43:21–1 *et seq.),* and liable under section 43:-

21-16(*d*) for the repayment of the benefits provided while so disqualified.

The first question is whether the employer "had sufficient interest" in the subject matter to warrant the issuance of a *certiorari* at his instance to review the judgment of the Board of Review absolving the employee from the obligation of repayment. The cases invoked are those holding that a review of a municipal ordinance by *certiorari* is open only to one who has suffered a special injury above and beyond that sustained in common with the public. *E. G. State, Montgomery Pros., et al. v. Inhabitants of Trenton,* 36 *N. J. L.* 79 *(Sup. Ct.* 1872*); Hamilton Lumber & Mfg. Co. v. City of Paterson,* 121 *N. J. L.* 95 *(Sup. Ct.* 1938*).* The conclusion below was that such special interest is to be found in the requirement of *R. S.* 43:21-7 *(c)* (1) that benefits paid to an eligible individual are chargeable to the employer.

But the insistence is that since the Appeal Tribunal, at Carlucci's instance, had overruled the Commission's demand for repayment of the benefits received by him, and the determination was, on the employer's appeal, affirmed by the Board of Review, under *R. S.* 43:21-6 *(b)* (1) the moneys so paid are not now chargeable to the employer, no matter what the outcome on *certiorari;* and if charged to the employer's account in disregard of this latter provision, the question is determinable in a suit between the employer and the Commission, in which Carlucci has no interest.

██ The instant proceeding is not within this double successive affirmance proviso. It is not an action for benefits instituted by the employee, but rather a proceeding under *section* 43:21-16 *(d)* for the recovery of benefits paid to one ineligible to receive them under the statute. The policy of *section* 43:-21-6 *(b)* (1) becomes readily apparent when considered in the light of the legislative purpose to provide immediate relief to the victims of involuntary unemployment. It has reference only to the initial proceeding for benefits brought by the employee. Here, the payments became chargeable to the respondent employer when made; and so the employer had an interest sufficient to challenge the adverse action below.

The benefits in question were paid to the employee during the year 1945. Later on, by *chapter* 35 of the *Laws* of 1947 *(Pamph. L. p. 94)*, the phrase "any individual" was substituted for "an eligible individual" in delimiting the class whose payments are chargeable to the account of the employer under *section* 43:21–7 *(c)* *(1)*. It would seem that in this respect the amendment, coming as it did soon after this controversy arose as to the meaning of the particular provision, was but a legislative demonstration of the sense of the original language, *i. e.* a legislative interpretation of the preexisting enactment rebutting the presumption of substantial change. *Sutherland's Statutory Construction (3d. ed. 1943) section* 1931. Be that as it may, the Commission deemed Carlucci eligible for benefits, and, however the original clause is read, the respondent employer had a continuing interest in the question of the claimant's eligibility until it was finally determined. The provision for charging the benefits paid against the employer's account gave rise to a special and peculiar interest sufficient in itself to invest the respondent employer with the right of review by *certiorari*. The respondent employer's unquestioned special interest under this statutory direction in the initial administrative action continues throughout the judicial review of the proceeding for the recapture of benefits actually paid. Here, there was no appellate review of the initial determination; and the cited provision of *subsection* 21:6 *(b)* therefore has no application.

The protection of the general or common interest rests with the public authorities. But in these circumstances the interest of the employer is something more than "a common concern for obedience to law." Compare *L. Singer & Sons v. Union Pac. R. Co.*, 311 *U. S.* 295, 61 *S. Ct.* 254, 85 *L. Ed.* 198 *(1940)*. It was the settled rule under the old practice in this State that *mandamus, certiorari* and *quo warranto* were invocable by private persons, in the court's discretion, "for the redress or prevention of public wrongs by public bodies and officers, whose official sphere is confined to some political division of the state, whenever the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights, and the public convenience will be subserved by the remedy desired."

*Bott v. Secretary of State,* 63 *N. J. L.* 289 *(E. & A.* 1899*).* And it has been the rule that "any ordinary taxpayer" may be admitted to prosecute a *certiorari* to review municipal action *ultra vires* or otherwise, that would result in the unlawful expenditure of public funds. *Ferry v. Williams,* 41 *N. J. L.* 332 *(Sup. Ct.* 1879*); Rehill v. East Newark and Jersey City,* 73 *N. J. L.* 220 *(Sup. Ct.* 1906*).*

Moreover, the essential design of the statute is, as we have seen, the provision of relief against involuntary unemployment, and, in the furtherance of this purpose, to withhold benefits where the work stoppage is due to a labor dispute, unless the employee "is not participating in or financing or directly interested in the labor dispute which caused the stoppage of the work." *R. S.* 43:21–2; 43:21–4; 43:21–5. Thus, the policy of denying access to the fund as a means of sustenance to those unemployed because of participation in a labor dispute is outstanding; and it would seem to be axiomatic that the employer also has a special interest sufficient to justify his interposition to prevent the use of the fund, created to relieve unemployment that is in fact involuntary, and made up in substantial part by his contributions *(R. S.* 43:21–7*),* for the advancement of the interests of the adversary parties to the labor controversy, and so to preclude misuse of the fund constituting in effect governmental intervention in aid of a party to a labor dispute in violation of the clear legislative policy.

Carlucci came into the benefits by reason of the "nondisclosure" of a material fact within the intendment of *R. S.* 43:21–16 *(d).*

When the initial claim for benefits was made, August 23, 1945, the labor dispute had not arisen. Before any benefits were paid on the claim, Carlucci resumed his employment and remained at work until the following September 23d, when the strike began. Thereafter, he presented weekly written "continued" claims for benefits based on the initial demand; but he failed to reveal the fact that his current unemployment was due to the strike and voluntary in the statutory sense.

In this, there was a failure to disclose a material fact precluding relief under the statute. The obligation of repay-

ment of benefits erroneously paid to one disqualified under the statute does not depend upon moral or conscious fraud in the nondisclosure or misrepresentation. The principal of the cases dealing with life insurance policies, *e. g. Kozlowski v. Pavonia Life Insurance Co.*, 116 *N. J. L.* 194 *(E. & A.* 1936*),* and *Zock v. Metropolitan Life Insurance Co.*, 117 *N. J. L.* 295 *(Sup. Ct.* 1936*),* has no application here. It does not matter whether there be concealment or mere silence. That such was the legislative intention is demonstrated by the use of the parenthetical clause "irrespective of whether such nondisclosure or misrepresentation was known or fraudulent." This qualification can have no other meaning. It clarifies and makes certain language that might otherwise be open to the interpretation that only fraud was comprehended. Even though the nondisclosure "by him or by another" be unwitting and without fraud, the benefits paid to the claimant by reason thereof while he was disqualified are recoverable, if the fact was material. The omission of the correlative adverbial phrase "or not" has no significance. As the lexicographers say, the negative contrasting alternative is implied. The clause is definitive; its plain sense is that benefits received under the statute while the recipient is disqualified are retrievable regardless of whether or no he knew of the vital fact undisclosed or misrepresented or was actuated by fraud in concealing or ignoring it. It is conceded that the words "known" and "fraudulent" are used in the same general sense. And it goes without saying that the employer's formal notice to the Commission of the existence of the strike at its plant, before the making of the payments in question, is not a differentiating circumstance. The contrary view would ignore administrative realities annd complexities and open the door to evasion of the statutory policy.

Judgment affirmed.

*For affirmance:* Chief Justice VANDERBILT and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING, and ACKERSON—7.

*For reversal:* None.