711 F.2d 364
 229 U.S.App.D.C. 86
 Jerry K. NICHOLSON, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
Louisiana Soybean Association, Missouri Pacific Railroad
Company, Intervenors.
 No. 82-1428.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 10, 1983.
Decided June 30, 1983.
 
 [229 U.S.App.D.C. 87] Petition for Review of an Order of the Interstate Commerce commission.
 Fritz R. Kahn, Washington, D.C., for petitioner and intervenor, Louisiana Soybean Ass'n.
 Sidney L. Strickland, Jr., Atty., I.C.C., Washington, D.C., with whom John Broadley, Gen. Counsel, Ellen D. Hanson, Associate Gen. Counsel, I.C.C., John P. Powers, III and Kenneth P. Kolson, Attys., U.S. Dept. of Justice, Washington, D.C., were on the brief, for respondents.
 John P. Legendre, Dallas, Tex., for intervenor, Missouri Pacific R. Co.
 John J. Rademacher, Washington, D.C., was on the brief for American Farm Bureau Federation, amicus curiae, urging that the order under review herein be vacated.
 Henry H. Bernard, Jr., Baton Rouge, La., was on the brief for Louisiana Farm Bureau Federation, Inc., amicus curiae, urging that the order under review herein be vacated.
 James I. Collier, Jr., Washington, D.C., was on the brief for Ass'n of American Railroads, amicus curiae, urging affirmance.
 Before ROBINSON, Chief Judge, WALD, Circuit Judge, and MacKINNON, Senior Circuit Judge.
 Opinion for the Court filed by Senior Circuit Judge MacKINNON.
 MacKINNON, Senior Circuit Judge:
 
 
 1
 Petitioner, Jerry K. Nicholson, challenges an order of the Interstate Commerce Commission (Commission) which dismissed his complaint alleging that the Missouri Pacific Railroad Co. (Missouri Pacific) had violated the Interstate Commerce Act, 49 U.S.C. § 10901(a) (Supp. V 1981),[1] by attempting to build a railroad line--to wit, a classification yard adjacent to its main-line track in Pointe Coupee Parish, Louisiana--on his land without a finding by the Commission of public convenience and necessity. The Commission ruled that the classification yard was not a "railroad line" requiring the approval called for by section 10901(a), but rather was a switching track excepted from Commission jurisdiction by 49 U.S.C. § 10907(b)(1) (Supp. V 1981).[2] Nicholson v. Missouri Pacific R.R., 366 I.C.C. 69, 72-74 (1982). Because well-established judicial and Commission precedent compel the conclusion that the proposed Missouri Pacific classification yard is not a "railroad line" requiring Commission approval, we affirm the Commission's order.
 
 I.
 
 2
 Petitioner owns farmland in Pointe Coupee Parish, Louisiana, on which he grows [229 U.S.App.D.C. 88] soybeans and other crops. Missouri Pacific presently owns a right-of-way over petitioner's land for the operation of a single-line track of railroad, but wishes to construct a classification yard adjacent to its track on petitioner's land. The numerous tracks in the yard will be used to switch cars in the making up and breaking up of freight trains, to arrange cars of trains in delivery order, and to sort cars in trains by types of cars or contents preparatory to train movement.[3] As a public utility, Missouri Pacific has filed an action under state law in Louisiana state court to acquire by condemnation the necessary portion of petitioner's land. Missouri Pacific R.R. v. Nicholson, Civil Action No. 17299 (La.Dist.Ct.1981).
 
 
 3
 Petitioner[4] filed a complaint with the Commission seeking a cease and desist order to prevent Missouri Pacific from taking any steps to construct the classification yard without Commission approval pursuant to section 10901(a).[5] Petitioner contended that the classification yard would be "an additional railroad line" requiring the Commission's prior approval and that the Commission had not made the findings required by the statute. 49 U.S.C. § 10901(a) (Supp. V 1981). A Commission Review Board dismissed the complaint because it was not ripe for review. The Review Board reasoned that a "civil decision against [Missouri Pacific] may totally moot the issue of whether Commission approval of [Missouri Pacific's] construction is required." Nicholson v. Missouri Pacific R.R., Finance Docket No. 29657, slip op. at 2 (Sept. 15, 1981). On appeal, the Commission affirmed the dismissal of petitioner's complaint, although on different grounds. Nicholson v. Missouri Pacific R.R., supra, 366 I.C.C. at 69.
 
 
 4
 The Commission found that the complaint was ripe for review because petitioner had demonstrated "a substantial probability that if the Commission waits, [petitioner] would be harmed by the challenged conduct before the Commission could determine its legality." Id. at 72. However, the Commission also found that the operations which would be performed at the classification yard would be incidental to main-line transportation and that such transportation would continue over Missouri Pacific's existing track. Noting that it had consistently held yards exempt from its jurisdiction under section 10907(b),[6] and had never authorized the construction of a classification yard, the Commission ruled that the proposed classification yard was not a railroad line requiring approval pursuant to section 10901(a). Id. at 72-74. This petition for review followed.
 
 II.
 
 5
 Petitioner contends that the Commission erred in concluding that construction of the proposed classification yard did not require its approval.[7] Petitioner argues that because section 10102(19) of the Interstate Commerce Act defines "railroad " to [229 U.S.App.D.C. 89] include "yard,"[8] the Act's requirement that Commission authorization be received prior to construction of "railroad lines" necessarily encompasses construction of "yards." Petitioner also argues that because the proposed classification yard will cost $75 million, the substantiality of the cost requires the Commission to rule upon the project prior to its construction. We find these arguments to be without merit.
 
 
 6
 It is well established that the determination of whether a particular track segment is a "railroad line," requiring Commission authorization pursuant to section 10901(a), or a "spur, industrial, team, switching, or side" track, exempt from Commission jurisdiction pursuant to section 10907(b),[9] turns on the intended use of the track segment, not on the label or cost of the segment. It was held early on that
 
 
 7
 it is sufficiently plain, from a consideration of not only the obvious purpose prompting the [Interstate Commerce Act[10] but also of the general nature of the tracks mentioned, that Congress intended to subject to the requirements of [section 1(18) ] so-called main or branch lines of railroad, that is, lines designed and used for continuous transportation service by through, full trains between different points of shipment or travel, and to exclude from the operation of the statute all that mass of "tracks" (as distinguished from "lines") naturally and necessarily designed and used for loading, unloading, switching, and other purposes [229 U.S.App.D.C. 90] connected with, and incidental to, but not actually and directly used for, such transportation service.
 
 
 8
 Detroit & M. Ry. v. Boyne City, G. & A.R.R., 286 F. 540, 546 (E.D.Mich.1923) (emphasis added).[11] Shortly thereafter, the Supreme Court held that
 
 
 9
 [i]f the purpose and effect of the new trackage is to extend substantially the line of a carrier into new territory, the proposed trackage constitutes an extension of the railroad within the meaning of [section 1(18) of the Act], although the line be short and although the character of the service contemplated be that commonly rendered ... by means of spurs or industrial tracks.
 
 
 10
 Texas & P. Ry. v. Gulf, Colo. & S.F. Ry., 270 U.S. 266, 278, 46 S.Ct. 263, 266, 70 L.Ed. 578 (1926) (emphasis added). Thus it can be seen that track segments which are intended to be used to carry through trains between points of shipment and delivery, particularly those segments which extend a railroad's service into new territory, must be approved by the Commission pursuant to section 10901(a). On the other hand, track segments which are merely incidental to, and not required for, a railroad's service between points of shipment and delivery are exempted from the requirements of section 10901(a) by section 10907(b).[12]
 
 
 11
 Application of these principles to Missouri Pacific's proposed classification yard compels the conclusion that construction of the Pointe Coupee Classification Yard is not the construction of a "railroad line" requiring Commission approval pursuant to section 10901(a). The yard will be located adjacent to Missouri Pacific's existing main-line track in Pointe Coupee Parish and will be used solely for storage, switching, and classification of railroad cars. Although the classification yard is expected to increase Missouri Pacific's efficiency in handling freight traffic, the yard will not extend Missouri Pacific's service into any new territory. Through trains will continue to move over Missouri Pacific's existing main-line track to their prior destinations; the classification yard will be incidental to the operation of trains over that track. Accordingly, construction of the classification yard is exempted from Commission jurisdiction by section 10907(b).
 
 
 12
 Support for this conclusion is found in a decision of the Fifth Circuit which held, without explanation, that Commission approval pursuant to section 1(18) of the Interstate Commerce Act[13] was not required prior to the construction of a classification yard. Georgia S. & Fla. Ry. v. Duval Connecting R.R., 324 F.2d 801, 802 (5th Cir.1963) (per curiam). Furthermore, the Commission has consistently interpreted the Act as not requiring its approval prior to the construction of yards:
 
 
 13
 The applicant correctly states that the construction of a new yard and the consolidation of terminal facilities are not within themselves subject to the jurisdiction of this Commission and may be accomplished without its authority.
 
 
 14
 [229 U.S.App.D.C. 91] Oregon-Washington R.R. & Navigation Co. Construction, 275 I.C.C. 591, 598 (1950) (emphasis added). Accord Terminal Ry. Ala. State Docks--Operation, Mobile, Ala., 354 I.C.C. 747, 749 (1978); Boston Terminal Co. Reorganization, 312 I.C.C. 373, 378 (1960).
 
 
 15
 Petitioner's arguments do not require a contrary result. The fact that the Interstate Commerce Act defines "railroad" to include "yard" does not support an interpretation that the phrase "railroad line" includes switching yards. There is a distinction in the statute between "railroad" and "railroad line." See Long Island R.R. v. New York C.R.R., 281 F.2d 379, 382-83 (2d Cir.1960).[14] Petitioner's reasoning simply ignores the significance of the term "line" in the phrase "railroad line," as well as sixty years of judicial and Commission interpretation of that phrase. Furthermore, nothing in the Act requires Commission authorization of railroad construction projects solely because such projects are costly.[15] It is the purpose, and not the cost, of such projects which determines whether Commission approval is required.
 
 
 16
 Petitioner contends that his position is supported by several Supreme Court decisions, but we find this reliance to be misplaced. The opinion by Chief Justice Taft in Railroad Commission v. Southern Pacific Co., 264 U.S. 331, 44 S.Ct. 376, 68 L.Ed. 713 (1924), comes the closest to discussing the point at issue, but it is distinguishable on its facts. In Southern Pacific the Court held that the Commission was required to give its approval before the City of Los Angeles could require three national railroads to replace their existing passenger stations with a single union station. Id. at 347, 44 S.Ct. at 379. The plan for the new union station required the three railroads to make substantial extensions to their main-line tracks, which, while not great in distance, would "involve a new intramural destination for each railway with important changes in the handling of interstate traffic and passengers" and great expense to change the routes of "the main tracks in a crowded city." Id. at 346, 44 S.Ct. at 379 (emphasis added). These substantial changes necessarily involved the abandonment by the three railroads of the main-line tracks that previously served their old depots and the extension of their main lines to the new terminal as ordered by the California State Railroad Commission at the request of the City of Los Angeles.
 
 
 17
 The project considered by the Court in Southern Pacific is clearly distinguishable from the Pointe Coupee Classification Yard because, as the Commission found, "the proposed [classification] yard is not a line of railroad or an extension of a line within the meaning of section 10901, since the operations to be performed at the yard are incidental to line-haul transportation." Nicholson v. Missouri Pacific R.R., supra, 366 I.C.C. at 74 (emphasis added) (footnote omitted). This factual description of the classification yard leaves the Commission without jurisdiction over the proposed construction. See 49 U.S.C. §§ 10901(a), 10907(b)(1) (Supp. V 1981). The absence of any change in, or extension of Missouri Pacific's mainline track, distinguishes its classification yard project from the union station project and associated new main lines that required Commission approval in Southern Pacific.[16]
 
 III.
 
 18
 Missouri Pacific's proposed classification yard will be incidental to the operation of its existing main-line track that runs [229 U.S.App.D.C. 92] through Pointe Coupee Parish, Louisiana. It does not involve any change in or extension of its mainline track and it qualifies as "switching" tracks that are specifically excluded by section 10907(b)(1) from the authority of the Commission under section 10901(a). Accordingly, the provisions of section 10901(a) do not require that Missouri Pacific obtain Commission authorization in order to construct said yard. The decision of the Commission so holding and dismissing petitioner's complaint against Missouri Pacific is therefore affirmed.
 
 
 19
 Judgment accordingly.
 
 
 
 [1]
 49 U.S.C. § 10901(a) (Supp. V 1981) provides:
 A rail carrier providing transportation subject to the jurisdiction of the Interstate Commerce Commission ... may--
 (1) construct an extension to any of its railroad lines;
 (2) construct an additional railroad line;
 (3) acquire or operate an extended or additional railroad line; or
 (4) provide transportation over, or by means of, an extended or additional railroad line;
 only if the Commission finds that the present or future public convenience and necessity require or permit the construction or acquisition (or both) and operation of the railroad line.
 
 
 [2]
 49 U.S.C. § 10907(b) (Supp. V 1981) (emphasis added) provides:
 The Commission does not have authority under sections 10901-10906 of this title over--
 (1) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks if the tracks are located, or intended to be located, entirely in one State....
 
 
 [3]
 The proposed classification yard will be approximately 3.5 miles long and 0.5 miles wide, will cover approximately 550 acres, and will consist of over 100 miles of track. The facility will cost Missouri Pacific approximately $75 million
 
 
 [4]
 Several other affected landowners joined in petitioner's complaint, but all have subsequently sold their land to Missouri Pacific and are not parties to this appeal. Brief for Intervenor, Missouri Pacific Railroad Co., at 3
 
 
 [5]
 See note 1 supra
 
 
 [6]
 See note 2 supra
 
 
 [7]
 Petitioner also raises several frivolous procedural arguments in his petition for review. Petitioner asserts that the Commission erred in denying the requests of the Louisiana Soybean Association, the American Farm Bureau Federation, and the Louisiana Farm Bureau Federation to intervene in the Commission proceeding. However, the Commission properly concluded that these organizations sought
 intervention to present testimony if the Commission holds a hearing on whether destruction of agricultural land to build a classification yard is warranted. Because of our ultimate decision dismissing the complaint [for lack of jurisdiction over the proposed construction], no purpose would be served in permitting these parties to intervene.
 Nicholson v. Missouri Pacific R.R., supra, 366 I.C.C. at 69 n. 2 (emphasis added). We find, in any event, that the clarity of the legal principles mandating our affirmance of the Commission's order obviates remand for purposes of intervention by these parties.
 Next petitioner contends that the Commission's decision was improper because only two Commissioners of the three Commissioner Division assigned to consider his complaint participated in that decision--one Commissioner would have participated only in the event of a tie. See id. at 74. The simple response to this argument is that the Interstate Commerce Act provides that the Commission may carry out its duties in Divisions consisting of three Commissioners, 49 U.S.C. §§ 10302(a), 10305 (Supp. V 1981), and that a majority of a Division is a quorum for the transaction of business. Id. § 10306(a). Since a quorum of the assigned Division dismissed petitioner's complaint, its decision was valid. Northern Valley Transfer, Inc. v. ICC, 192 F.Supp. 600, 603 (D.N.J.1961).
 Finally, petitioner asserts that the decision was improper because the Commission was "politically imbalanced" at the time it was rendered; at that time the Commission consisted of three Republicans and one Democrat. However, petitioner concedes, as he must, that nothing in the Interstate Commerce Act requires a Division of the Commission to be politically balanced. Brief for Petitioner at 31. Thus petitioner can assert no injury as a result of the composition of the Commission since his complaint could have been assigned to a Division of the same Commissioners even if the Commission had consisted of a full contingent of eleven Commissioners, six from one party and five from the other. See 49 U.S.C. § 10301(b) (Supp. V 1981). Petitioner's real grievance with respect to the composition of the Commission lies with the President and the Senate, who failed to appoint and confirm additional Commissioners, and not with the validly appointed Commissioners who then composed the Commission. Assure Competitive Transp., Inc. v. United States, 629 F.2d 467, 474-75 (7th Cir.1980), cert. denied, 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981). The Act authorizes those Commissioners to exercise the powers of the Commission irrespective of vacancies in the membership of the Commission. 49 U.S.C. § 10301(e) (Supp. V 1981).
 
 
 [8]
 49 U.S.C. § 10102(19) (Supp. V 1981) (emphasis added) provides:
 "railroad" includes--
 ....
 (C) a switch, spur, track, terminal, terminal facility, and freight depot, yard, and ground, used or necessary for transportation.
 
 
 [9]
 Congress first codified the provisions of the Interstate Commerce Act in 1978. Act of Oct. 17, 1978, Pub.L. No. 95-473, 92 Stat. 1337. Prior to that time the provisions of sections 10901 and 10907 were found at section 1(18) of the Act. Insofar as is relevant to this case, the codification made no substantive changes in these provisions. See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 319 n. 7, 101 S.Ct. 1124, 1131 n. 7, 67 L.Ed.2d 258 (1981)
 
 
 [10]
 The court indicated that the purpose of Congress in enacting the Interstate Commerce Act was,
 as was pointed out by Interstate Commerce Commissioner Clark while speaking before the Committee on Interstate and Foreign Commerce of the House of Representatives, ... "to prevent the building of duplicate lines of railroad because of keen rivalry of certain financial interests, or when the railroads so built will not serve the present or future convenience and necessity, and will simply depend for traffic upon that which they can get away from railroads already built, adding to the total burden of maintenance, capital returns, etc., which the public must pay."
 Detroit & M. Ry. v. Boyne City, G. & A.R.R., 286 F. 540, 545 (E.D.Mich.1923).
 
 
 [11]
 Accord New Orleans Terminal Co. v. Spencer, 366 F.2d 160, 165-66 (5th Cir.1966), cert. denied, 386 U.S. 942, 87 S.Ct. 974, 17 L.Ed.2d 873 (1967) (emphasis added) ("If there are traffic movements which are part of the actual transportation haul from shipper to consignee, then the trackage over which the movement takes place is a 'line of railroad, or extension thereof....' If, however, the trackage is used in the loading, reloading, storage and switching of cars incidental to the receipt of shipments by the carrier or their delivery to the consignee, then such trackage is 'spur, industrial, team, switching or side tracks' and as such, not under Commission jurisdiction")
 
 
 [12]
 That a track segment is or is not identified as a "spur, industrial, team, switching, or side" track is not determinative of whether it is exempted by section 10907(b) from Commission jurisdiction. See, e.g., Texas & P. Ry. v. Gulf, Colo. & S.F. Ry., supra, 270 U.S. at 274-79, 46 S.Ct. at 265-66 (track segment identified as "industrial" track held to require Commission approval pursuant to section 1(18)); New Orleans Terminal Co. v. Spencer, 366 F.2d 160, 165-66 (5th Cir.1966), cert. denied, 386 U.S. 942, 87 S.Ct. 974, 17 L.Ed.2d 873 (1967) (track segment identified as "side" track held to require Commission approval pursuant to section 1(18)); Georgia S. & Fla. Ry. v. Duval Connecting R.R., 324 F.2d 801, 802 (5th Cir.1963) (per curiam) (track segment identified as "yard" track held not to require Commission approval pursuant to section 1(18))
 
 
 [13]
 See note 9 supra
 
 
 [14]
 See also note 12 supra
 
 
 [15]
 Cf. 49 U.S.C. § 11301 (Supp. V 1981) (Commission approval required prior to issuance of certain securities by railroads; Commission required to investigate intended use of proceeds from sale of such securities prior to approval)
 
 
 [16]
 The other cases upon which petitioner relies are similarly inapposite and do not require a different result than we reach: L. Singer & Sons v. Union Pacific R.R., 311 U.S. 295, 303-04, 61 S.Ct. 254, 257-58, 85 L.Ed. 198 (1940) (interest of merchant at market in Kansas City, Missouri was not sufficiently affected to give him right to enjoin construction of an extension of track by the Union Pacific Railroad to a new competing market in Kansas City, Kansas where such extension did not constitute a material change in the railroad's transportation system); Texas v. United States, 292 U.S. 522, 528-35, 54 S.Ct. 819, 822-25, 78 L.Ed. 1402 (1934) (Commission was empowered under the Emergency Railroad Transportation Act of 1933, in the interest of economy, to authorize lease of one interstate railway to another and to permit lessee to abandon or remove the general offices and shops of lessor even though such abandonment or removal was prohibited by the law of the state of lessor's incorporation in which such offices and shops were located); Piedmont & N. Ry. v. ICC, 286 U.S. 299, 303-05, 308-12 (1932) (electric line carrier that proposed to build two extensions of 53 and 73 miles respectively was not exempt from the requirement of obtaining a certificate of public convenience and necessity for such construction as a "street, suburban, or interurban electric railway" under section 1(22) of the Interstate Commerce Act where its track on city streets was only 2.9 miles--2.25 percent of its total track--and its business was pre-eminently interchange, interstate freight traffic of national character in all respects conducted the same as the business of steam freight carriers in the territory served); Texas & P. Ry. v. Gulf, Colo. & S.F. Ry., supra, 270 U.S. at 276-79, 46 S.Ct. at 265-66 (see discussion at p. 368 supra; new 7.5 mile track intended to serve new territory currently being served by a competitor constitutes an extension of railroad within the meaning of the Transportation Act of 1920, and is not a spur or industrial track)