## BORAH v. WHITE COUNTY BRIDGE COMMISSION.

### No. 10653.

United States Court of Appeals
Seventh Circuit.

Oct. 17, 1952.

L. H. Vogel, George C. Bunge, Chicago, Ill., Leigh M. Kagy, East St. Louis, Ill., for appellant.

Henry I. Green, Urbana, Ill., Enos L. Phillips, Urbana, Ill., Stewart A. Pearce, Kenneth E. Pearce, Ulys Pyle, Carmi, Ill., for defendants-appellees.

Before KERNER, FINNEGAN, and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

In this action plaintiff, a user of and toll-payer on a toll bridge extending across the Wabash river between Illinois and Indiana, filed his complaint against the White County Bridge Commission, a corporation created by an act of Congress and approved April 12, 1941,[1] three members and all the

---

1. The Act is designated as Public Law 37 of the 77th Congress and is entitled: "An Act To create the White County Bridge Commission; defining the authority, power, and duties of said Commission; and authorizing said Commission

officers of the Commission, under the Declaratory Judgments Act, 28 U.S.C.A. § 2201, seeking a declaratory judgment to the effect that he has a legal right to examine all records of the Commission showing the cost of maintaining the ferry or ferries; the cost of the bridge and its approaches, the expenditures for maintaining and operating the same, and the daily tolls collected; to make copies thereof; and to be assisted in such examinations by such attorneys, accountants and investigators as he may select, and that a mandatory injunction be issued directing defendants to make such records available to him.

In his complaint plaintiff relied on § 5 of the Act which provides " * * * An accurate record of the cost of the bridge and its approaches; the expenditures for maintaining, repairing, and operating the same; and of the daily tolls collected, shall be kept and shall be available for the information of all persons interested. * * *" And he asserted that as a taxpayer and tollpayer he was "a person interested" within the meaning of § 5.

Section 9 of the Act provides: "The commission shall have no capital stock or shares of interest or participation, and all revenues and receipts thereof shall be applied to the purposes specified in this Act. The members of the commission shall be entitled to compensation for their services, but the maximum compensation of the chairman in any year shall not exceed $1,200 and of each other member in any year shall not exceed $600. * * * The commission may employ a secretary, treasurer, engineers, attorney, and other such experts, assistants, and employees as they may deem necessary, who shall be entitled to receive such compensation as the commission may determine. * * * After all bonds and interest thereon shall have been paid and all other obligations of the commission paid or discharged, or provision for all such payment shall have been made as hereinbefore provided, and after the bridge shall have been conveyed to the Illinois

interests and the Indiana interests as herein provided, and any ferry or ferries shall have been sold, the commission shall be dissolved and shall cease to have further existence by an order of the Commissioner of Public Roads made upon his own initiative or upon application of the commission or any member or members thereof, but only after a public hearing in the city of Carmi, Illinois, notice of the time and place of which hearing and the purpose thereof shall have been published once, at least thirty days before the date thereof, in a newspaper published in the city of Carmi. At the time of such dissolution all moneys in the hands of or to the credit of the commission shall be divided into two equal parts, one of which shall be paid to said Illinois interests and the other to said Indiana interests."

The complaint discloses that the bridge was purchased for $895,000 in 1941, and that a ferry was purchased at about the same time for $50,000; that the purchase price of the bridge and ferry was obtained by bonds issued in the amount of $945,000, and that from June, 1941, to November, 1951, the Commission had collected $2,165,700 in tolls, but that $470,000 of the bonds issued still remain unpaid. Thus it appears that the bridge was built and financed by private funds raised through private borrowing to be repaid not from taxes but from authorized tolls collected for the use of the bridge.

The complaint makes no charge of misfeasance, malfeasance, or irregularity against the Commission or any of the defendants. It does, however, allege that plaintiff had demanded and been denied the right to examine defendants' books and records, but had been referred to the trustee for the bonds issued by the Commission where he might secure information regarding the Commission's financial affairs.

In the District Court defendants moved to dismiss the complaint on the grounds that plaintiff, as a citizen, and taxpayer, and a tollpayer and user of the bridge, was not "a person interested" and had no right

and its successors and assigns to purchase, maintain, and operate a bridge across the Wabash River at or near New

Harmony, Indiana, and to purchase, maintain and operate certain ferries." 55. Stat. 140.

under the Act to inspect defendants' records; that the provisions of the Act providing for the enforcement thereof by the attorneys general of the States of Illinois and Indiana, or the United States district attorney, are exclusive. The District Court sustained the motion, the complaint was dismissed, and plaintiff has appealed.

The first question presented is whether plaintiff, as a citizen and taxpayer, is entitled to a declaratory judgment, requiring that all the books and records of the Commission be made available to him. He argues that he is entitled to such a judgment and makes the point that the Commission is a public corporation and its records are public records.

■■■ It is true that where a corporation, or a public board or commission, created for some governmental purpose, derives its revenue from taxation, a taxpayer who, by taxation, is required to contribute to its revenues has a direct interest in the manner in which such revenue is expended.[2] But where a corporation derives all its revenues from a service furnished and rendered, a taxpayer has no interest in it or its affairs other than or different from that of the public generally. In such case the corporation is treated exactly as a private corporation, and the right of the taxpayer to sue must be determined according to the law of the state where the action is brought. New York Evening Post Co. v. Chaloner, 2 Cir., 265 F. 204. In this connection Illinois courts have held that an individual, merely because he is a taxpayer, cannot be heard to complain against a public or quasi-public corporation or its officers, unless he shows that he has sustained a special injury or suffered a special damage different in degree and kind from that suffered by the public at large. Koehler v. Century of Progress, 354 Ill. 347, 188 N.E. 445; Price v. City of Mattoon, 364 Ill. 512, 4 N.E.2d 850. The remedy must be sought through those representing the public. City of Chicago v. Union Building Ass'n, 102 Ill. 379, 398. There is no claim here that plaintiff has any interest other than or different from any other taxpayer, or that he has or will sustain a special injury or suffer a special damage, different in degree or kind, from what might be suffered by any other taxpayer.

■■ We now consider plaintiff's contention that as a tollpayer and user of the bridge he is a "person interested" within the meaning of § 5 of the Act.

Although he makes no charge of malfeasance or irregularity against defendants, he argues that as a user of the bridge he has a direct interest in seeing that the provisions of the Act are fulfilled; that dissipation or misappropriation of the Commission's funds postpones the day when the bridge will become a free bridge and increases the amount in tolls which he has been and will be compelled to pay for the use of the bridge. He cites Freeland v. City of Sturgis, 248 Mich. 190, 226 N.W. 897. But that case was a suit by taxpayers against a city operating a municipally owned hydroelectric plant. It charged that the city was guilty of misapplication of receipts from the plant by using the receipts for general expenses of the city without retaining necessary funds for the payment of bonded indebtedness, and hence is not applicable to our case.

In disposing of this contention Judge Wham said: "Was it the intention of the Congress by said provision of said Act to 'grant a free right of inspection' and to use the term 'persons interested' as indicating 'any persons sufficiently interested to request the right of inspection'? A careful consideration of the entire Act and the specific words 'for information of all persons interested' as used therein leads me to the conclusions (1) that said words may not be thus broadly interpreted and (2) that even if they were, plaintiff may not maintain this suit.

"It seems to me that to give the words in question the broad interpretation insisted upon by plaintiff is to hold that the Congress, without any appar-

2. Nowack v. Fuller, 243 Mich. 200, 219 N.W. 749, 60 A.L.R. 1351; State ex rel. Colscott v. King, 154 Ind. 621, 57 N.E. 535; McCoy v. Providence Journal Co.,

1 Cir., 190 F.2d 760; and Town of Nahant v. United States, 1 Cir., 136 F. 273, 69 L.R.A. 723.

ent need, has imposed upon the Bridge Commission an unreasonable burden of standing in readiness to provide at all times for an inspection of its records by anyone interested enough to request the right of inspection. The number of such persons might well be legion. Such a burden might well become intolerable. If imposition of such burden were needed or would be reasonably required to protect the public interest it might be convincingly argued that the broad interpretation argued for by plaintiff was intended. But there would seem to be no necessity for such an unprecedented provision, if interpreted as plaintiff insists, in view of the provision made for the protection by duly qualified officials of all public interests that may be affected by any violation of the Act by the Commission or by any failure to comply with its provisions. Section 12 of the Act provides:

" 'All provisions of this Act may be enforced or the violation thereof prevented by mandamus, injunction, or other appropriate remedy brought by the attorney general for the State of Illinois, the attorney general for the State of Indiana, or the United States district attorney for any district in which the bridge may be located in part, in any court having competent jurisdiction of the subject matter and of the parties.'

"Thus was means and authority, apparently deemed adequate, provided by the Congress for protecting the public interest in the bridge and ferries. There would seem to be no need for further means or authority to that end.

"If circumstances exist that point to a dissipation of funds by the Bridge Commission, any one of the officials designated in Section 12 is no doubt entitled to inspect the records to ascertain the facts and presumably would do so, if need therefor were brought to their attention.

"To decide this case the court is not required to explore the full scope, meaning and reach of the words 'all persons interested' as used in the Act. Undoubtedly, the officials named in said Section 12 are included. It is probable that bondholders are included under some circumstances, as well as others who have special claims that might be undermined by dissipation of moneys collected. Plaintiff seeks no relief except an establishment of his claimed right under the statute as a taxpayer and bridge user and tollpayer to examine the records and the enforcement of that right by injunction.

"On page 26 of his Supplemental Brief plaintiff says:

" 'At the present time, we are not seeking to hold anyone to account for anything or to enforce any substantive provisions of the White County Bridge Commission Act. We simply wish to avail ourselves of the right of inspection to which the plaintiff is entitled as a "person interested" under Sections 5 and 6. Plaintiff is entitled to have his rights in this respect declared and confirmed and defendants enjoined from interfering with them.'

"In my opinion plaintiff's position thus stated cannot be sustained. By reason of plaintiff's failure to show an interest, aside from an interest common to all citizens and taxpayers, I am of [the] opinion that he is not an 'interested person' within the meaning of the Act and is not entitled to a judgment declaring that he is entitled, as a citizen, taxpayer and user of the bridge to inspect the records of defendants."

With this conclusion we agree. By analogy we find support therefor in what was said in L. Singer & Sons v. Union Pacific Railroad Co., 311 U.S. 295, 61 S.Ct. 254, 85 L.Ed. 198. That case involved an interpretation of the Transportation Act, 1920, 49 U.S.C.A. § 1. It provided that any "party in interest" could bring action to enjoin extensions of railroad lines which were undertaken without a certificate of convenience and necessity. The defendant had constructed a spur to a newly constructed market. Plaintiffs, commercial merchants doing business near the market, sought to enjoin this construction, but the

Supreme Court, in holding that plaintiffs were not a "party in interest," 311 U.S. at page 303–304, 61 S.Ct. at page 258 said: "Such a suit cannot be instituted by an individual unless he 'possesses something more than a common concern for obedience to law.' The general or common interest finds protection in the permission to sue granted to public authorities. An individual may have some special and peculiar interest which may be directly and materially affected by alleged unlawful action. * * * If such circumstances are shown he may sue; he is then [a] 'party in interest' within the meaning of the statute. In the absence of these circumstances he is not such a party."

Affirmed.