275 F.2d 529
 UNITED STATES of America and White County Bridge Commission ex rel. United States of America, Plaintiffs-Appellants,
v.
WHITE COUNTY BRIDGE COMMISSION; Roy Clippinger, Former Manager and Commissioner; J. Madison Pomeroy, Commissioner; Lenna A. Kern, Administrator of the Estate of Julius C. Kern, Former Commissioner; and Carmi Times Publishing Company, a Corporation, Defendants-Appellees.
 No. 12730.
 United States Court of Appeals Seventh Circuit.
 January 11, 1960.
 Rehearing Denied March 21, 1960.
 
 1
 COPYRIGHT MATERIAL OMITTED Samuel D. Slade, Sherman L. Cohn, Attys., Appellate Section, U. S. Dept. of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., C. M. Raemer, U. S. Atty., East St. Louis, Ill., for appellants.
 
 
 2
 Stewart A. Pearce, Kern & Pearce, Carmi, Ill., for Estate of Kern.
 
 
 3
 Hurshal C. Tummelson, Jr., Enos L. Phillips, Urbana, Ill., for Roy Clippinger and Carmi Times Pub. Co.
 
 
 4
 John P. Wham, Charles Wham, Centralia, Ill., Albert W. McCallister, Stewart A. Pearce, Carmi, Ill., for White County Bridge Commission.
 
 
 5
 Ivan A. Elliott, Jr., of Conger & Elliott, Carmi, Ill., for J. Madison Pomeroy.
 
 
 6
 Before HASTINGS, Chief Judge, DUFFY, Circuit Judge, and GRUBB, District Judge.
 
 
 7
 GRUBB, District Judge.
 
 
 8
 This is an appeal from a dismissal of the complaint in an action instituted by the United States Attorney, on behalf of the named plaintiffs, seeking a money judgment, removal from office of defendant Pomeroy, and for any other relief the court may deem just and proper.
 
 
 9
 The White County Bridge Commission was created by Congress, Act of April 12, 1941, Public Law 37, 55 Stat. 140, for the purpose of acquiring, maintaining, and operating a bridge across the Wabash River between Illinois and Indiana. The Act authorized the acquisition by private borrowing, to be repaid from tolls collected for that use, and for the added purpose of providing a fund sufficient for the maintenance and operation of the bridge until such time as all interests therein were conveyed to Illinois and Indiana, respectively.
 
 
 10
 The Commission was established as a body corporate and politic with power to sue and be sued. The Act designates the original Commissioners, among them defendant Pomeroy and the late Julius Kern. Vacancies on the Commission are to be filled by appointment by a designated member of the executive department of the United States.[1]
 
 Section 12 of Public Law 37 provides:
 
 11
 "All provisions of this Act may be enforced or the violation thereof prevented by mandamus, injunction, or other appropriate remedy brought by the attorney general for the State of Illinois, the attorney general for the State of Indiana, or the United States district attorney for any district in which the bridge may be located in part, in any court having competent jurisdiction of the subject matter and of the parties."
 
 
 12
 This court notes the Report of the Select Committee to Conduct an Investigation and Study of the Financial Position of the White County Bridge Commission, House Report No. 2052, 84th Congress, 2d Session (1956), pursuant to House Res. 244.
 
 
 13
 According to the Report, an audit of the accounts and records of the White County Bridge Commission requested by the Select Committee and conducted by the Comptroller General of the United States under date of September 29, 1955, calls attention to:
 
 
 14
 "(1) the dual capacities in which Roy Clippinger, the commission manager, served, particularly during the 1950-55 period, in that as bridge manager he made purchases of commodities and placed advertising for the commission of and with himself, he being the largest stockholder and manager, editor, and publisher of the Carmi Times, a newspaper published in Carmi, Ill., in which newspaper office the White County Bridge Commission had its office, and (2) the failure of the bridge manager to purchase supplies at the most economical and lowest prices obtainable, his paying insurance premiums on an automobile owned, registered, and titled in the name of and used by the Carmi Times, purchasing various items for the Bridge Commission which have been used by the Carmi Times, and various other transactions detailed in the report."
 
 
 15
 The audit further alleges and the Report details a number of apparently questionable expenditures involving payments to the Carmi Times Publishing Co., "the ownership and management of which is closely tied in with the management of the White County Bridge Commission."
 
 
 16
 In respect to the then present condition, the Report states that the purchase bonds were paid off in July, 1955, and that thereafter the State of Illinois, directly, and the State of Indiana, indirectly, indicated that they would not consider taking the bridge in its "present unsafe condition." The unsafe condition apparently is one of structural unsoundness, in part correctable by river channel improvements contemplated by the Army engineers, and in part due to the condition of the bridge itself.
 
 
 17
 As to the possibilities of the bridge becoming free of tolls, the report concludes that unless certain financial solutions could be worked out with the States, the United States Bureau of Public Roads owed it to the public which uses this bridge to take it over and operate it.
 
 
 18
 "When Congress created this Commission it impliedly assured the public that when the bonds were retired the bridge would be free of tolls. * * * As long as the present Commission and its manager operate the bridge it will never be free of tolls."
 
 
 19
 The Select Committee raised certain other significant considerations, as for example:
 
 
 20
 "It may also be apparent that the kind of activities in which the manager indulged in getting the bill through Congress are being continued by him with a view of keeping the bridge under control and preventing it from becoming a free bridge. If there had not been diversion of Commission funds of more than $69,000, that money would go a long way in the direction of making the bridge acceptable to the States. The Commission purchased a supply of Hadacol. The committee was unable to learn who drank the Hadacol.
 
 
 21
 "There is still another thing that may be wondered about — whether the acts of the Commissioners and the bridge manager do not indicate a common purpose, a breathing together, to thwart the intention of the Congress with respect to eventually having this bridge free of tolls, and to deprive the United States of its right to have this Bridge Commission administered `according to Hoyle,' free, open and above-board, always in the best interests of the Commission, and not have its funds diverted to purposes and uses other than paying off the purchase bonds, taking care of and operating the bridge."
 
 The Report also notes that:
 
 22
 "* * * the manager and at least two of the Commissioners have made money out of it from not only their salaries, but as they are financially interested in the Carmi Times Publishing Co. and the manager threw fat and juicy business to that newspaper, they profited additionally and personally. This is the conflict of interest which has been developed by the committee's investigation * * *."
 
 
 23
 The Committee recommended, among other things, that the Act be amended to provide for an annual audit of the Commission's books and records by the Comptroller General of the United States, that the terms of office of the Commissioners be declared vacant and new members be appointed for a statutory term, and:
 
 
 24
 "B. That the attorneys general of the States of Illinois and Indiana and the United States attorneys in districts in which any part of the bridge exists, who are authorized by the act creating the Commission to act in enforcing all provisions of the act, be advised of the findings of this select committee, so that they or any of them may take whatever appropriate action they or either of them deem proper."
 
 
 25
 The third amended complaint in this action which is before this court on the appeal rests jurisdiction on Section 12 of the Act, supra, and on Section 1345, Title 28 U.S.C.A.[2]
 
 
 26
 Count I alleges that this is a civil action to recover funds collected by the Commission and misapplied by defendants. It further alleges that defendants breached a fiduciary duty in failing to maintain, repair, and operate the bridge under economical management in that certain amounts of tolls collected were not properly used for the maintenance, repair, and operation of the bridge but were used for improper and wrongful purposes for the benefit of the private interests of all of the defendants; and that the defendants, by their failure to utilize properly the tolls collected and by their improper and wrongful expenditures, have diverted a certain sum and have been wrongfully and unjustly enriched in that amount. As a result of said conduct by the defendants, the Commission has been deprived of said amount which would otherwise be available to the Commission for the purpose of repair and maintenance of the bridge.
 
 
 27
 Count II alleges that the conduct asserted in Count I resulted partially from Commissioner Pomeroy's breach of duty in that he did not faithfully perform the duties imposed upon him by the Act but, rather, that he knowingly allowed such wrongful expenditures; and that Pomeroy was unjustly enriched by the wrongful expenditures of the Commission's funds.
 
 
 28
 The United States demands judgment against the defendants and on behalf and for the account of the Commission for funds wrongfully diverted and for removal of Commissioner Pomeroy and appointment of a successor Commissioner.
 
 
 29
 Exhibit B to the Third Amended Complaint entitled "Recapitulation of Ascertainable Financial Detriment to the Commission and Corresponding Benefit to Roy Clippinger's Interests and to the Benefit of the Carmi Times Publishing Company, an Illinois Corporation," consists of various items of expenditures totaling $69,101.74.
 
 
 30
 The District Court dismissed the complaint on the ground that the Commission was the real party in interest and that there was no authority under the Act creating the Commission for the United States Attorney to bring the action without authorization to do so by the Commission, and that the court was unable to find any relief which might have been granted on this complaint.
 
 
 31
 On the appeal, the government conceded the dismissal of the complaint as to Lenna A. Kern, administrator of the estate of Julius C. Kern, former Commissioner.
 
 
 32
 The White County Bridge Commission was previously before this court on an appeal from a dismissal of a complaint for declaratory judgment in an action by a toll payer and user of the toll bridge who sought to examine the records of the operation of the bridge in Borah v. White County Bridge Commission, 7 Cir., 1952, 199 F.2d 213. This court, in affirming the dismissal, held that the plaintiff could not be heard to complain against a public or quasi-public corporation or its officers, and that his remedy must be sought through those representing the public.
 
 
 33
 Section 12 has been included in Public Law 37 for the purpose of safeguarding the interests of that section of the public which has equitable interests in the assets of the Commission since it has been designated by Congress as the intended ultimate owner of the bridge and of any funds remaining in the hands of the Commission at the termination of its existence.
 
 
 34
 The officials authorized under Section 12 to maintain actions are proper persons to represent the section of the public involved here; that is, the citizens of the States or districts where the bridge is physically located. Since the States of Illinois and Indiana have not as yet accepted the bridge, it is appropriate that the United States Attorney for one of the districts involved act on the recommendation of the Select Committee and take such appropriate action as he may deem proper. Although the action is brought in the interest of protecting certain public rights, the United States is the plaintiff in such an action and the District Court is the proper forum.
 
 
 35
 The remedies enumerated in Section 12 traditionally may be used for enforcing or challenging official conduct. However, mandamus, an extraordinary writ, may not be entertained in the federal District Courts under these circumstances.
 
 
 36
 The function of the equitable remedy of injunction, also listed in the Section, is "preventive, prohibitory, protective, or restorative, as the law and circumstances of the case warrant." Moore's Federal Practice, Section 65.04 (1), citing 4 Pomeroy's Equity Jurisprudence (5th ed. 1941), § 1337.
 
 
 37
 The allegations of the complaint, to be taken as true on motion for dismissal, state that "* * * defendants * * * failed to maintain, repair, and operate the bridge under economical management in that at least $69,101.74 of tolls collected were not properly used for the maintenance, repair or operation of the bridge but were used for improper and wrongful purposes for the benefit of the private interests of all of the defendants." These allegations assert a claim based on a violation of Public Law 37 wherein the Commission is charged with the economical management in maintaining, repairing, and operating the bridge and its approaches, as well as on a violation of the provisions of said law that "All tolls and other revenues from said bridge are hereby pledged to such uses and to the application thereof as hereinafter in this section required." The Act does not authorize the use of such funds for the personal benefit of any of the persons made defendants in this action.
 
 
 38
 The government's demand for judgment does not expressly seek the equitable remedy of injunction but asks for restitution and for any other relief the court may deem just and proper. Its theory of recovery rests on incidental relief and fails to encompass the whole of the remedy available to it to prevent a violation of Public Law 37.
 
 
 39
 This limited conception as to the proper theory of recovery is not fatal in this action. Rule 8, Federal Rules of Civil Procedure, 28 U.S.C.A., governing the general rules of pleading, requires of the pleader that he make "* * * (3) a demand for judgment for the relief to which he deems himself entitled."
 
 
 40
 The general rule in appraising the sufficiency of a complaint for failure to state a claim is that a complaint should not be dismissed "* * * unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 1957, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80; Seymour v. Union News Company, 7 Cir., 1954, 217 F.2d 168; and see Rule 54(c), Demand for Judgment, Federal Rules of Civil Procedure, 28 U.S.C.A.: "* * * every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."
 
 
 41
 The general principle that pleadings are intended "to serve as a means of arriving at fair and just settlements of controversies between litigants" is firmly established. Maty v. Grasselli Chemical Co., 1938, 303 U.S. 197, 200, 58 S.Ct. 507, 509, 82 L.Ed. 745. To that end they are to be construed liberally in favor of the pleader. The theory of the complaint is to be determined by its main and material allegations. First Nat. Bank of Colorado Springs v. McGuire, 7 Cir., 1950, 184 F.2d 620. A pleading is judged by its substance and not its form. Thus, actions erroneously brought at law may be transferred to equity. See Kerrigan's Estate v. Joseph E. Seagram & Sons, 3 Cir., 1952, 199 F.2d 694.
 
 
 42
 If proof of the government's claim establishes a substantial portion of the findings of the Select Committee, plaintiff, United States of America, is entitled to the remedy of injunction and, incidental thereto, to an accounting and restitution as against all parties participating in the violation of Public Law 37. The United States Attorney is authorized by the Act to bring such an action, and the District Court has authority to entertain the case. However, the White County Bridge Commission is not a proper party plaintiff herein, and the action should be maintained in the name of the United States alone. In equity the court may restore misappropriated funds to the proper party regardless of whether this party is lined up as plaintiff or defendant in the action.
 
 
 43
 The government is not entitled to relief on its demand for removal of a Commissioner and the appointment of a successor Commissioner. Congress itself appointed the original Commissioners and designated where power of appointment lies to fill vacancies on the Commission. Public Law 37 does not authorize the bringing of an action seeking the removal of these officials. Generally the power to appoint public officials carries with it the power of removal. Burnap v. United States, 1920, 252 U.S. 512, 40 S.Ct. 374, 64 L.Ed. 692, and Myers v. United States, 1926, 272 U.S. 52, 47 S. Ct. 21, 71 L.Ed. 160. It is also a general rule that the courts have no jurisdiction to remove a public official unless so authorized by statute. Walton v. House of Representatives, 1924, 265 U.S. 487, 44 S.Ct. 628, 68 L.Ed. 1115; 67 C.J.S. Officers § 67, p. 288.
 
 
 44
 For the foregoing reasons the order of the District Court dismissing the complaint is hereby affirmed in part and reversed in part, and the case is remanded for further proceedings not inconsistent with this opinion.
 
 On Petitions for Rehearing
 
 45
 The White County Bridge Commission, Commissioner J. Madison Pomeroy, Carmi Times Publishing Company, and Roy Clippinger petition this court for a rehearing in the above-entitled cause. The grounds upon which said petitions are based do not warrant the granting of the relief demanded.
 
 
 46
 The decision in this cause is based on the allegations of the government's complaint. These were determined to be sufficient to state a cause of action for equitable relief as provided for by the statute creating the White County Bridge Commission, Public Law 37, 55 Stat. 140. With respect to the Select Committee Report noted by the court, we observed that should proof under the allegations of the complaint establish a substantial portion of the findings of the Report, the government would be entitled to the relief requested.
 
 
 47
 Since this court determined that the complaint in this action was for equitable relief to remedy a violation of Public Law 37, there is a basis for relief against the Commission insofar as it may be charged with a presently continuing violation of that statute in the alleged mismanagement of the affairs of the bridge. Failure to recover and properly allocate funds diverted from their pledged use may constitute a continuing violation. Restoration of the illegally diverted funds to the Commission which is the legal title holder of the assets of the bridge would not of itself cure the alleged mismanagement in violation of the statute.
 
 
 48
 Where a complaint alleges facts from which the court may reasonably infer lack of an adequate remedy at law or irreparable injury, the want of express allegations thereof is not fatal. This complaint alleges that the defendants failed to maintain, repair, and operate the bridge under economical management in that some of the tolls collected were diverted from their proper use. These allegations state facts constituting a violation of Public Law 37 which, under the terms of that statute, may be prevented by "mandamus, injunction, or other appropriate remedy." By nature, this is an action to enforce or protect a beneficial equitable interest of the public in the bridge and its assets. It has been conceded that mandamus does not lie in the District Court. Defendants have consistently contended that the term "other appropriate remedy" must be construed so as to preclude the legal remedy of restitution based on a theory of unjust enrichment. Petitioners fail to point out a legal remedy maintainable in the federal courts adequate to restrain alleged facts constituting continuing violations of the law by the Commission and other defendants, or to protect the public interest. Cf. Humble Oil & Refining Co. v. Sun Oil Co., 5 Cir., 1951, 191 F.2d 705, certiorari denied 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 687.
 
 
 49
 Injury to a beneficial estate through mismanagement of assets, not remediable by an action at law, is irreparable for the purposes of the law of injunctions. See 28 Am.Jur. Injunctions, Section 48.
 
 
 50
 Count I of the complaint is directed at all defendants. Commissioner Pomeroy allegedly participated in the acts which may be in violation of Public Law 37. The complaint, therefore, states an equitable claim against Commissioner Pomeroy as well as against the Commission.
 
 
 51
 Petitioners proceed on the assumption that the complaint herein states a legal claim or possibly a claim for equitable relief in aid of the legal action. This assumption rests on a misinterpretation of this court's decision. The basis of this claim lies in equity, and the remedy is equitable. There is no constitutional right to a trial by jury in an equitable action.
 
 
 52
 The petitions for rehearing are hereby denied.
 
 
 
 Notes:
 
 
 [1]
 Under Title 5 U.S.C.A. § 133z-15, Reorganization Plan No. 7, the Secretary of Commerce is now the appointing officer
 
 
 [2]
 § 1345. "United States as plaintiff — Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."