**Franklin S. WALLACE, Individually, and on behalf of all other users of the Rock Island Centennial Bridge, similarly situated, and on behalf of all other holders of Rock Island Centennial Bridge Revenue Bonds and Interest Coupons similarly situated, Plaintiff,**

v.

**CITY OF ROCK ISLAND, a Municipal Corporation of the State of Illinois, Defendant.**

**Civ. A. P—2384.**

United States District Court
S. D. Illinois, N. D.

Oct. 4, 1961.

Stuart R. Lefstein, Ferguson & Lefstein, Rock Island, Ill., for plaintiff.

Charles D. Marshall, Jr., Marshall, Marshall & Arndt, Rock Island, Ill., for defendant.

MERCER, Chief Judge.

Pursuant to authorization granted by Public Law 446, 52 Stat. 110, defendant, City of Rock Island, prior to 1958, erected a bridge across the navigable waters of the Mississippi River to a western termination point in the State of Iowa. Hereinafter, sometimes that bridge is referred to as the Centennial Bridge. Pursuant to an amendment of Public Law 446, by Public Law 682, 70 Stat. 520, defendant adopted an ordinance for the issuance and sale of revenue bonds in the principal amount of some $4,650,000 for the purpose of financing the cost of reconstruction and enlargement of the bridge and its approaches. That ordinance provided that tolls would be charged for the use of the bridge, which would be allocated, first, to the expenses and costs of maintenance of the bridge, second, to provide a sinking fund sufficient to pay the interest and the principal as the same came due upon the bonded indebtedness and, third, to a bridge revenue surplus account.

The bond ordinance provided, among other things, that defendant might, by resolution of its City Council, cause up to 50% of tolls accumulated in any fiscal year in the bridge revenue surplus account to be transferred to the City Treasurer for defendant's general corporate funds account.

By his complaint, praying an injunction and other relief, plaintiff alleges that defendant, by resolution of its City Council, adopted July 1, 1960, caused the sum of $52,314.80 to be transferred from the bridge revenue surplus account to the Treasurer of defendant City. The theory of action underlying each count of the complaint is that the bond ordinance insofar as it permits bridge revenue funds to be transferred to defendant, is a violation of the toll provisions of Public Law 446, as amended,[1] 33 U.S.C.A. § 529 [2] and

---

1. Public Law 446, as amended by Public Law 682, provides, in pertinent part:

"Sec. 3. The city of Rock Island, Illinois, or its assigns, is hereby authorized to fix and charge tolls for transit over such bridge, and the rates of toll so fixed shall be the legal rates until changed by the Secretary of War under the authority contained in the Act of March 23, 1906.

"Sec. 4. In fixing the rates of toll to be charged for the use of such bridge the same shall be so adjusted as to provide a fund sufficient to pay for the reasonable cost of maintaining, repairing, and operating the bridge and its approaches (including the reasonable cost of reconstructing, enlarging, and extending such bridge and its approaches) under economical management, and to provide a sinking fund sufficient to amortize the cost of such bridge and its approaches, including reasonable interest and financing cost, as soon as possible, under reasonable charges, but within a period of not to exceed thirty years from the completion of the reconstruction, enlargement, and extension of such bridge and its approaches as provided in subsection (b) of the first section of this Act. After a sinking fund sufficient for such amortization shall have been so provided, such bridge shall thereafter be maintained and operated free of tolls in accordance with such arrangement as may be agreed upon by the city of Rock Island, Illinois, or its assigns, and the State highway departments or other appropriate agencies of the States of Iowa and Illinois. An accurate record of the cost of the

is an invalid tax upon interstate commerce in violation of Article I, Section 8 of the Constitution of the United States.

Defendant has moved to dismiss the complaint, challenging, upon several bases, the existence of federal court jurisdiction of the subject matter. An understanding of that issue which is now before the court requires summarization of the complaint in some detail.

Under Count I of the complaint, plaintiff alleges a cause of action in his own behalf as a user of the bridge and on behalf of a class composed of all other users of the bridge. In addition to allegations of the federal statutes and the ordinance as above summarized, and of the fact of the transfer of funds from the bridge revenue surplus account, plaintiff alleges that he pays at least $20 annually in tolls for the use of the bridge. He further alleges that Public Law 446, as amended, requires that tolls collected be used only for paying expenses of maintenance and for amortization of the costs of bridge construction, and that the bridge be toll free after those charges upon revenue have been satisfied. Plaintiff's theory of damage to himself and the alleged class is that the transfer of toll revenues to defendant's treasurer will delay the day when the cost of construction will be amortized and plaintiff and plaintiff class might use the bridge toll free.

The factual allegations of Count II are identical to those of Count I as to the physical facts alleged to constitute a controversy. There plaintiff in his own right sues as a holder of one of the revenue bonds. It is alleged that as a direct result of the action of the defendant in transferring funds from the bridge revenue surplus account to defendant's treasurer plaintiff, as a bondholder, has been deprived of a degree of financial protection that otherwise would be his if bridge revenues were applied only for maintenance of the bridge and payment of the revenue bonds. Again it is alleged that the provision of the ordinance which authorizes the transfer of funds to the treasurer of the defendant City is illegal and void, because of a conflict with the provisions of Public Law 446, as amended by Public Law 682, and with the provisions of 33 U.S.C.A. § 529. Finally, Count II alleges that the plaintiff is entitled to have the bridge toll funds applied by the defendant in accordance with the requirements of federal law as plaintiff conceives them to be.

The allegations of Count III are identical to those of Count II, except that plaintiff there sues on his own behalf and on behalf of all other holders of the revenue bonds who are similarly situated.

The prayer of each count is that the court will hold the provision of the bonding ordinance authorizing the transfer of a part of the bridge revenues to defendant's treasurer to be in conflict with federal law, and therefore, void, and that the court will enjoin further transfers of funds and will require the restoration of funds already transferred.

■ Thorough consideration of the applicable statutes and case law related thereto leads to the conclusion that Count I of the complaint does not state a justiciable controversy. Assuming for the

---

bridge and its approaches; expenditures for maintaining, repairing, and operating the same; expenditures for reconstructing, enlarging, and extending the same; and all of the daily tolls collected shall be available for the information of all persons interested."

2. 33 U.S.C.A. § 529 provides in pertinent part:
"If tolls are charged for the use of an interstate bridge constructed or taken over or acquired by a State or States or by any municipality or other political subdivision or public agency thereof, under the provisions of sections 525–533 of this

title, the rates of toll shall be so adjusted as to provide a fund sufficient to pay for the reasonable cost of maintaining, repairing, and operating the bridge and its approaches under economical management, and to provide a sinking fund sufficient to amortize the amount paid therefor, including reasonable interest and financing cost, as soon as possible under reasonable charges, but within a period of not to exceed thirty years from the date of completing or acquiring the same. After a sinking fund sufficient for such amortization shall have been so provided, such bridge shall thereafter be maintained and operated free of tolls."

sake of argument that the named plaintiff adequately represents the class which is alleged in Count I, it is apparent from the face of the complaint that any right or interest of plaintiff and the plaintiff class is an interest common to the public generally. Thus, plaintiff alleges that he has used the bridge for some five years and expects to use the bridge regularly in the future; and that he has paid in the past, and expects to pay in the future, at least $20 per year in tolls for the use thereof. The complaint then alleges that other users of the bridge are similarly situated and that the transfer of funds collected as tolls to the general treasury of the City will delay the day when plaintiff and all other bridge users can use the bridge toll free.

Those allegations impel the conclusion that plaintiff asserts no damage to himself and the class which he represents which differs from damage to the public generally. In Greater Hartford Free Bridge Ass'n v. Greater Hartford Bridge Authority, D.C.D.Conn., 172 F.Supp. 244, affirmed 2 Cir., 265 F.2d 656, it was held that a suit by individual bridge users and an unincorporated association of bridge users to enjoin the collection of tolls on an interstate bridge did not allege a justiciable controversy. I am impressed with the correctness of that decision, and follow it in the disposition of the motion to dismiss Count I of the complaint.

■ The court, in Greater Hartford, held also that the general bridge statute and the enabling act under which the bridge was built created no individual rights in users of the bridge to redress an alleged violation of the statute. That holding is likewise persuasive. Litigation might never end if the enabling act under which the Centennial Bridge was built must be construed to create in every person who pays a toll for the use of the bridge a right to file suit to redress alleged violation of the statute by the bridge owner. In the absence of express creation of such rights by the statutes, I conclude that no such rights exist. To same effect, Borah v. White County Bridge Comm., 7 Cir., 199 F.2d 213. If the defendant has violated the federal statutes, that violation may be redressed upon complaint by the United States or an appropriate agency thereof. Any detriment to the motoring public would thereby be alleviated.

For the reasons above stated, Count I of the complaint will be dismissed.

The situation with respect to Counts II and III stands on slightly different ground. In Count II, plaintiff, as a bondholder of one of the revenue bonds issued for the reconstruction of the bridge and its approaches, predicates his suit upon a lessening of his security by the transfer of toll funds to the City Treasurer. In Count III, he sues as a bondholder, individually and on behalf of all other holders of revenue bonds, predicating his suit upon the same basis as that of Count II.

The ordinance under which these bonds were issued and sold provides, among other things, that the holders of the bonds shall have a cause of action against the defendant to compel the performance of any duty imposed upon it by the ordinance itself or by Acts of Congress. I think it unquestionable that that provision creates in plaintiff the right to file a suit against defendant to compel compliance with a federal statute.

Before that suit may be prosecuted in a federal court, however, plaintiff must bring himself within the statutory jurisdiction of the federal courts. Reliance is placed by plaintiff upon both 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

■ To give the court jurisdiction under Section 1331,[3] the complaint must contain allegations showing that the jurisdictional amount of $10,000 is involved. Each Count II and Count III contains the customary recital that the jurisdictional amount is in controversy,

3. "§ 1331. Federal question; amount in controversy; costs
  "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

but it appears from the face of the complaint that the recital is inaccurate. In neither count is there any allegation that plaintiff has suffered, or that the other bondholders whom he represents in Count III have suffered, any pecuniary loss whatsoever from the action of defendant of which complaint is made. In that regard, the complaint alleges only that the plaintiff bondholders are deprived, and will be deprived, of a degree of security which otherwise they would have had surplus funds not been transferred to the City Treasurer. There is absent any allegation that bonds or the interest coupons thereof have not been paid when the same became due and payable. On the contrary, the fair implication of the complaint is that all have been paid.

A fair appraisal of the complaint leads to the conclusion that there is no amount in controversy between plaintiff and the plaintiff class and this defendant. If, in fact, the transfer of toll revenue to the City Treasurer is a violation of the federal statutes, plaintiff's interest in that fact differs not one iota from the interest of the public generally, namely, the common desire that the laws of the land be respected. The requirements of Section 1331 for federal jurisdiction of the subject matter are not satisfied.

Plaintiff earnestly contends that his cause of action arises under an act of Congress regulating commerce and jurisdiction lies under Section 1337 of the Code.[4] I reject that contention. The mere fact that interstate travel and transportation is involved incidentally and that the acts of defendant of which complaint is made may have some effect upon interstate commerce is not sufficient basis for federal jurisdiction under Section 1337. Toledo, P. & W. R. Co. v. Brotherhood of Railroad Trainmen, etc., 7 Cir., 132 F.2d 265, reversed on other grounds 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534; Sharp v. Barnhart, 7 Cir., 117 F.2d 604. To give rise to federal jurisdiction under Section 1337, a cause of action must concern the validity, enforcement or construction of an act regulating commerce, Toledo, P. & W. R. Co. v. Brotherhood, of Railroad Trainmen, etc., supra; Adams v. Brotherhood, 10 Cir., 262 F.2d 835, and must involve rights of the complaining party created by Act of Congress which are abridged or denied by defendant's actions. Cf., e. g., Felter v. Southern Pacific Co., 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854; A. F. L. v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873.

Public Law 446, as amended, is an enabling act permitting and authorizing defendant to construct a bridge over the navigable waters of the Mississippi River and to operate the bridge so constructed pursuant to that grant of permission and authority. Regulation of commerce is involved only incidentally, and only in the sense that the existence or non-existence of the bridge, and the manner of its operation, does effect the flow of commerce. We are not here concerned with the right of the United States, or an appropriate agency thereof, to enforce the act, but only with the question whether the act gives a right to private persons to seek federal court aid to the same end. I conclude that no such private right arises under the Act or under the general bridge statute[5] upon which plaintiff relies. That conclusion is supported by the cases of Delaware River Joint Toll Bridge Comm. v. Miller, D.C.E.D.Pa., 147 F. Supp. 270, and Greater Hartford Free Bridge Ass'n v. Greater Hartford Bridge Authority, D.C.D.Conn., 172 F.Supp. 244, affirmed 2 Cir., 265 F.2d 656, and, by analogy, by the decision in Borah v. White County Bridge Comm., 7 Cir., 199 F.2d 213.

For the foregoing reasons defendant's motion to dismiss is allowed, and it is ordered that the complaint, and each count thereof, be and the same is dismissed.

4. "§ 1337. Commerce and anti-trust regulations
"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

5. 33 U.S.C.A. § 525 et seq.