**654**

**UNITED STATES of America,**
**Plaintiff,**

**v.**

**ROCK ISLAND CENTENNIAL BRIDGE COMMISSION** and its members—Melvin McKay, Franklin Wingard, Roy A. Miller, Maurice Corken, and Morris E. Muheman, all of Rock Island, Illinois, as Commissioners of the Rock Island Centennial Bridge Commission, the City of Rock Island, a Municipal Corporation of the State of Illinois, and Rock Island Bank and Trust Company, as Trustee, Defendants.

**Civ. A. No. P-2444.**

United States District Court
S. D. Illinois, N. D.

May 25, 1964.

Edward R. Phelps, U. S. Atty., Springfield, Ill., Jonathan Altschuler, Dept. of Justice, Washington, D. C., for plaintiff.

Reidy, Katz McAndrews, Durkee & Telleen, Rock Island, Ill., for defendants.

Charles D. Marshall, Jr., Rock Island, Ill., for City of Rock Island, Ill.

MERCER, Chief Judge.

The United States filed its complaint for an accounting and for an injunction restraining the enforcement of that part of an ordinance of the defendant, City of Rock Island, which authorizes the City to have transferred to its general corporate purpose fund any part of the revenues derived from tolls collected upon the Rock Island Centennial Bridge.[1]

The defendants are City of Rock Island, Illinois, Rock Island Centennial Bridge Commission, all of the members of that Commission and Rock Island Bank & Trust Company.

The cause is before the court upon motions of all defendants to dismiss the complaint and the motions of the United States, City of Rock Island and the Commission and its members for summary judgment.

The facts of the controversy are not disputed. Under the authority of Public Law 446, 52 Stat. 110, defendant, City of Rock Island, erected a bridge across the navigable waters of the Mississippi River to a western termination point in the State of Iowa. Pursuant to an amendment of Public Law 446 by Public Law 682, 70 Stat. 520, the City adopted an ordinance for the issuance and sale of revenue bonds in the principal amount of some $4,650,000 for the purpose of financing the cost of the reconstruction and enlargement of the bridge and its approaches. That ordinance provided that tolls would be charged for the use of the bridge, which would be allocated to various account including a bridge revenue surplus account. The defendant bank is designated by the ordinance as trustee, for sinking fund allocations, including the said surplus account. The ordinance further provided that the City might, by resolution of its City Council, cause up to 50% of the toll revenue accumulated in any fiscal year in the bridge revenue surplus account

to be transferred to the City Treasurer for the City's general corporate funds account. The City of Rock Island, by a resolution adopted July 1, 1960, by its City Council, caused the sum of $52,314.-80 to be transferred from the bridge surplus account to the Treasurer of the defendant city.

The United States contends that the provision of the City ordinance under which that transfer of funds was made is in violation of the provisions of the federal enabling act as amended, and its complaint prays that the parties be required to account for revenues obtained from tolls collected upon the Centennial Bridge, that the parties restore to the Centennial Bridge Fund the sum of $52,-314.80 and that the parties be enjoined from enforcing the provisions of the City ordinance which permit the City to transfer funds received from bridge tolls to the general corporate funds of the City.

I hold that the court has jurisdiction of the cause. If the enabling act adopted by Congress imposes restrictions upon the purposes for which bridge tolls may be charged, either one or two results must emanate from the fact that the act itself makes no express provision for enforcement of its provisions. Either the act is not subject to enforcement, or the Attorney General as chief counsel for the United States, has authority to file a suit in the name of the United States to enforce the statute. To me the first alternative is untenable. Congress had the power to legislate. There is no contention here that that power was lacking, and it is inconceivable to me that the exercise of that power could be flouted without any hope of redress. It has been held that the Attorney General possesses a broad authority to conduct litigation to enforce the rights and interests of the United States. E. g., United States v. Republic Steel Corp., 362 U.S. 482, 80

1. Wallace v. City of Rock Island, S.D.Ill., 198 F.Supp. 73, aff'd, 7 Cir., 303 F.2d 637, involved the same factual situation as does this suit. It was there held that the court had no jurisdiction of a suit by an individual to test the validity of the Rock Island ordinance.

S.Ct. 884, 4 L.Ed.2d 903; United States v. California, 332 U.S. 19, 27, 67 S.Ct. 1658, 91 L.Ed. 1889. In any case where the United States has a justiciable interest, the general grant of authority to the Attorney General contains the power to institute a suit to redress that right despite the absence of a specific act of Congress authorizing the suit. United States v. Republic Steel Corp., supra; United States v. California, supra. It was the expressed congressional intent in granting authority for the construction of this bridge that the bridge be toll free at the earliest possible time. The public interest in the existence of toll-free bridges is a legitimate interest of the United States. C. f., United States v. White County Bridge Comm., 7 Cir., 275 F.2d 529.

Applying the cited authorities, I hold that the United States has the standing to prosecute this suit and that the court has jurisdiction under the provisions of 28 U.S.C. § 1345.

The defendants, Rock Island Centennial Bridge Commission and Melvin McKay, Franklin Wingard, Roy A. Miller, Maurice Corken and Morris E. Muheman, as Commissioners of the Rock Island Centennial Bridge Commission, are entitled to a judgment upon their motion dismissing the complaint. The money in question was transferred by the Bank as Trustee, to the City. The complaint does not allege that the Commission, or any of the named Commissioners, took any part in the transaction transferring such funds, or that any of them had the authority under the ordinance by which the Commission was created to make or effect any such transfer of funds. The complaint fails completely to state a cause of action against the Commission and its members upon which any relief can be granted. Not only is there no dispute as to any material fact, but the complaint reveals upon its face that there is no controversy between the United States and these defendants. Summary judgment of dismissal is, therefore, an appropriate remedy. Fletcher v. Bryan, 4 Cir., 175 F.2d 716, C. f., Friedman v. Washburn Co., 7 Cir., 145 F.2d 715, 717.

There is no merit to the motion of the defendant Bank to dismiss the complaint. The case would be different if the only relief prayed in the complaint was the refund of the money paid to the City. In that case, it might be argued that the Bank is simply a Trustee, appointed by the City Council, with its duties and authority limited by the provisions of the ordinance by which it was appointed. The complaint, however, prays for an accounting as to all moneys transferred to the City and for an injunction restraining the enforcement of the ordinance insofar as it authorizes the payment of moneys from the surplus fund into the general fund of the City. If the United States is correct in the theory of its complaint, and if it is entitled to an injunction, such injunction should bind both the City and the trustee. The Bank's motion to dismiss the complaint will be denied.

The complaint is sufficient to state a cause of action against the City, and the City's motion to dismiss will be denied.

With reference to the cross-motions of the United States and the City for summary judgment, there is no dispute as to any material fact. The City fixed the tolls to be charged for the use of the bridge, which the enabling act authorized it to do. The challenged ordinance provided that revenue received as tolls should be allocated, first, to an "operation and maintenance" account in an amount sufficient to defray expenses of the operation, maintenance, and repair of the bridge, and, second, to the Centennial Bridge Sinking Fund in the hands of the trustee Bank. Such money was to be credited by the trustee to three account, namely, an account to pay the interest and principal payments due on all bonds as the same became due, a redemption account for the redemption of Series B of 1958 bonds and a surplus account. The ordinance then provided that one-half of the surplus account could be transferred by the trustee

in each year to the Treasurer of the City for deposit in the City's general fund by resolution of the City Council.[2] Such a resolution was adopted, pursuant to which the sum of $52,314.80 was transferred to the City Treasurer on or about July 14, 1960.

The position of the government is that the enabling act authorized the City to exact tolls from users of the bridge for purposes specified in the Act and no other.

Section 3 of the act authorized the City to fix rates of tolls. Section 4 provides:

"In fixing the rates of toll to be charged for the use of such bridge the same shall be so adjusted as to provide a fund sufficient to pay for the reasonable cost of maintaining, repairing, and operating the bridge and its approaches under economical management, and to provide a sinking fund sufficient to amortize the cost of such bridge and its approaches, including reasonable interest and financing cost, as soon as possible, under reasonable charges, but within a period of not to exceed thirty years from the completion thereof. After a sinking fund sufficient for such amortization shall have been so provided, such bridge shall thereafter be maintained and operated free of

tolls. An accurate record of the cost of the bridge and its approaches; the expenditures for maintaining, repairing, and operating the same; and of the daily tolls collected shall be kept and shall be available for the information of all persons interested * * *." P.L. 448, 52 Stat. 110, as amended, 70 Stat. 520, 72 Stat. 582.

To me the statutory language is clear and unambiguous. It limits the purpose for which toll revenue may be disbursed to the maintenance of the bridge and the amortization of the bridge. The City's authority to build the bridge was expressly made subject to all conditions contained in the bill and to the provisions of the general bridge statute of 1906.[3] If the legislative purpose is not clear from the statute itself, the legislative history leaves no doubt as to the intent of Congress. Of the original enabling act it was said:

"* * * The tolls would have to be fixed at such rates as will meet reasonable annual maintenance * * and create a sinking fund. * * * After such sinking fund shall have been provided the bridge would be required to be maintained and oper-

---

2. Section 6 B(iii) of that ordinance provides in pertinent part:

"If any balance shall remain in the Surplus Account after the foregoing provisions, said Trustee shall promptly transfer one-half of said balance to the Redemption Account for Series B of 1958 Bonds to be used for the prior redemption of bonds as hereinabove provided. The remaining one-half of said balance in the Surplus Account may, pursuant to resolution passed by the City Council of said city, be ordered transferred by the Trustee to the City Treasurer for deposit in the general corporate purpose fund of said City as payment for general services and expenses, including loss of taxes resulting from the construction of said bridge and its approaches; provided, however, that such one-half of said surplus revenues that may be available at the end of any fiscal year and is not so transferred to said City within six months after becoming available therefor shall be

retained by the Trustee and deposited in said Sinking Fund to be used and held in the same manner as revenues deposited in said Fund."

3. "*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That in order to promote interstate commerce, improve the postal service, and provide for military and other purposes, the city of Rock Island, Illinois, or its assigns be, and is hereby, authorized to construct, maintain, and operate a bridge and approaches thereto across the Mississippi River, at a point suitable to the interests of navigation, at or near Rock Island, Illinois, and to a place at or near Davenport, Iowa, in accordance with the provisions of the Act entitled 'An Act to regulate the construction of bridges over navigable waters', approved March 23, 1906, and subject to the conditions and limitations contained in this Act."

ated free of tolls." H.R.Rep.No. 1723, 75 Cong., 3rd Sess., 1, 2.

Of the 1956 Act, 70 Stat. 520, which provided for the enlargement of the bridge and its approaches, it was said:

> "The committee further believes that the approaches included as a part of the bridge project should be only those used primarily for access to the bridge, and not extend beyond an area where some use could be made of such roads irrespective of their use in connection with the bridge. *It does not believe that tolls for crossing the bridge should be used to finance city streets, avenues, or boulevards, not in close proximity to the bridge.* * * *
>
> "The bill has also been amended to conform with the general policy established by Congress in the Federal Bridge Act of 1946 (60 Stat. 812) with respect to the freeing of publicly owned interstate toll bridges when the costs thereof have been repaid from toll collection." S.Rep. No.1730, 84th Cong., 2nd Sess., 2, 3. (Emphasis supplied).

It is clear that it was the intention of Congress that the bridge be toll free at the earliest possible time, and that the authority to exact tolls is conditioned upon the use of the receipts thereof for the maintenance of the bridge and the amortization of the bridge indebtedness. The City ordinance authorizing the use of such receipts for general corporate purposes of the City is in conflict with the federal act and invalid.

The City's argument that the ordinance is authorized by the Illinois statutes, now I.R.S.1963, c. 121, Sec. 10–801 et seq., and that the court should decline jurisdiction in advance of a state decision interpreting the state statute, is not persuasive in this case. The state statute is not in issue. It is unnecessary to decide whether this ordinance is, or is not, authorized by the state statute. Our chore is the interpretation of a specific enabling act as it applies to restrict the power of the City to appropriate bridge revenues to purposes not connected with the operation and amortization of the bridge.

I hold that the transfer of the sum of $52,314.80 from the bridge surplus fund to the general corporate purpose fund of the City was in violation of the federal act. An appropriate remedy is a judgment requiring the City to restore the money to the bridge sinking fund, c. f., United States v. White County Bridge Comm., 7 Cir., 275 F.2d 529, 535, and an injunction restraining the City, its officers and agents and the trustee Bank, from hereafter enforcing, or attempting to enforce, the provisions of any ordinance which would purport to authorize the transfer of any part of the revenue from tolls collected upon the Rock Island Centennial Bridge to the general corporate purpose fund of the City of Rock Island.

Plaintiff is directed to prepare a judgment order consistent with the views herein expressed dismissing the complaint as to the Commission and the Commission members therein named as defendants, denying the motions of the Bank and the City of Rock Island to dismiss the complaint, denying the motion of the City of Rock Island for summary judgment and granting the motion of the United States for summary judgment against the City of Rock Island and Rock Island Bank & Trust Company for the restoration of the sum of $52,314.80 to the bridge revenue surplus account, for an accounting for all moneys paid to the City of Rock Island for purposes not connected with the operation, maintenance and amortization of the Contennial Bridge and an injunction permanently enjoining the said City and the said Bank from enforcing the provisions of the said ordinance for the transfer of bridge revenues to the City for any purpose other than the operation, maintenance and amortization of the Bridge. Plaintiff is further directed to prepare an appropriate injunction order, and to submit the same and the judgment order for the court's approval after notice to all defendants.