AMITUANA'I E. R. MEREDITH, Petitioner

v.

TAGALOA MOLA, Respondent

No. 2511-1973

High Court of American Samoa

Civil Jurisdiction, Trial Division

January 31, 1973

This matter comes before us on a complaint for declaratory relief and petition for mandatory injunction. Petitioner is a candidate for the seat of Senator from Lealataua County. He prays for a declaration that he is the duly elected Senator from Lealataua; alternatively, he seeks an order compelling Respondent to submit his name and that of his rival, Noa Lafi, to the Senate for election by that body.

Lealataua County consists of the villages of Fagamalo, Fagalii, Poloa, Amanave, Fa'ilolo, Agugulu, Seetaga, Nua, Atauloma, Afao, Amaluia and Asili.[1] As it constitutes the twelfth district, it is entitled to seat one senator.[2] According to custom, it is divided into two divisions: Tapua'iga and Samatua.[3] Prior to the previous senatorial election, all the matais from the County agreed to alternate the seat between the two divisions.[4] The former Senator, Tuveve Ameperosa, is a titleholder from Tapua'iga; therefore, according to the agreement, the Senator for this term must be titleholder from Samatua.

Petitioner and Noa Lafi are both registered matais from Lealataua County, Samatua Division, and are fulfilling their obligations required by Samoan custom therein. Both are candidates for Senator. A number of meetings were conducted by the matais of Samatua; however, a decision as to which of these two candidates would be Senator was not reached. It was decided that both names be submitted to the Senate for a decision. Respondent attempted to certify the name of Noa Lafi; however, after investigation initiated by the President of the Senate, both names were submitted to the Senate uncertified by the Election Commissioner. Tuveve Ameperosa, a declared candidate from Tapua'iga, filed objection with the Senate as to both candidates on January 4, 1973.

The matter came on originally for hearing on January 9, 1973. To enable Respondent to obtain assistance of counsel, we continued the hearing until January 17. An order temporarily restraining any candidate from taking the seat was issued, and the parties were advised to attempt further to resolve the dispute according to Samoan custom

---

[1] Constitution of American Samoa, Art. II, § 2.
[2] Revised Code of American Samoa, § 2.0602.
[3] Tapua'iga division: Agugulu, Fa'ilolo, Amanave, Poloa, Fagalii, Maloata, and Fagamalo; Samatua division: Amaluia, Asili, Afao, Nua, and Seetaga.
[4] All parties and witnesses acknowledged the existence of this agreement before the Court. We entertain no conclusions as to its existence or terms.

without the necessity of judicial ruling. Prior to the hearing on January 17, the matais of Lealataua County, present in the courtroom, requested time to confer for the purposes of settling the dispute. A short period therefor was granted; however, it proved unavailing. Testimony and evidence were then presented. At the close of Petitioner's case, we ordered the matter continued until January 26, and suggested that Respondent conduct, after timely notice, a meeting of the County Council to select between the two candidates. Further, we suggested that Respondent keep a written record of the meeting; that he note the absence of any matai; that he keep a written list of the votes for each candidate; and that he request the presence of a representative of the Election Board during the meeting. He failed to call such a meeting.[5] Further evidence and argument were submitted on January 26. An order restraining certification and seating of a Senator from Lealataua County until conclusion of these proceedings was issued on January 29, 1973.

We take jurisdiction of this matter pursuant to Constitution of American Samoa, Art. III, § 1: "The judicial power shall be vested in the High Court . . . ," and Revised Code of American Samoa, § 3.0304: "The Trial Division of the High Court shall have original jurisdiction in all civil cases, controversies, and matters. . . ." Although the exercise of jurisdiction here went unchallenged, the Court considered and ruled to so exercise on its own motion. The criteria for subject matter jurisdiction are set forth in *Baker v. Carr*, 396 U.S. 186 (1962) and approved in *Powell v. McCormack*, 395 U.S. 486 (1969). They are:

---

[5] We find the failure of the County Chief to call a meeting during the continuance an appalling breach of his responsibility to the County. Instead of using his good office to restore harmony, something which is exigently needed at this time, his inaction forces this Court to order the County to so act. The bitterness resulting from his obduracy will last long past the drying of the ink of this decision.

1. The case must arise under the Constitution, laws or treaties; 2. it must involve a case or controversy; 3. the cause must be described in a jurisdictional statute. Beyond question, these are met in the instant matter. The cause arises under the Constitution of American Samoa, Art. II, § 4.[6] A case arises under the Constitution, according to no lesser authority than the United States Supreme Court, when Petitioner's claim will be sustained if the Constitution is given one construction and fails if given another. *Powell v. McCormack*, supra; *Bell v. Hood*, 327 U.S. 678 (1946). Here, Petitioner's claim for relief rests on the construction given Art. II, § 4. See *Powell v. McCormack*, supra, *Baker v. Carr*, supra. It was decided sub silentio in *Bond v. Floyd*, 385 U.S. 116 (1966), that a claim to a seat in a legislature is a case and controversy. Accord, *Powell v. McCormack*, supra. The cause is described in the statutes, heretofore referred, under which we take jurisdiction. The contention that a claim to a seat in the legislature is without the jurisdiction of the Courts even where these criteria are met when faced with a constitutional provision assigning to the legislature the power to judge the elections and qualifications of its members has been rejected squarely in *Powell v. McCormack*, supra. Presented with such a statute here,[7] we find *Powell* controlling and hold accordingly.[8]

Art. II, § 22, although not relevant as a jurisdictional consideration, is most significant in determining whether the cause is justiciable or a "political question" requiring resolution by the legislature. See *Bond v. Floyd*, supra; *Powell v. McCormack*, supra. In deciding this question, we

[6] "MANNER OF ELECTION: Senators shall be elected in accordance with Samoan custom by the county councils of the counties they are to represent."

[7] Constitution of American Samoa, Art. II, § 22.

[8] We expressly disapprove of *Moananu v. Sotoa*, Civ. 25 (1963) and *Sumalevai v. Aso'au Ofisa*, Civ. 39 (1965) as contrary to *Powell v. McCormack* and our holding today.

must determine: 1. whether the relief sought is of the type which admits of judicial resolution; 2. whether the cause presents a "political question."

■■■ Although, justiciability was not challenged here, we briefly pass on the question. First, the relief sought, although not clearly pleaded in the complaint, does admit of judicial resolution. We cannot, as Petitioner would have us do, authorize submission of the two names to the Senate for election, for such action would be in violation of the Constitution. See *Faliu v. Fofo*, Civ. 2504 (1972). Art. II, § 4, requires election by county council, not the Senate. Art. II, § 22, does not alter or provide exemption from that requirement. Further, we cannot render a declaration, also requested by Petitioner, that he is the duly elected Senator, for that would encroach, and critically so, on the power vested in the Senate by Art. II, § 22, and such is not substantiated by a preponderance of the evidence. However, insofar as liberality exists in permitting relief if the facts support such on any theory,[9] we have decided to treat this action as seeking a declaratory judgment of the construction of Art. II, § 4, and a mandatory injunction compelling Respondent to comply with that construction in the selection of the Senator from Lealataua County.

■■■ A declaration of the construction of a statute is, most positively, within the judicial realm of relief when there is a dispute between the parties, as there exists here, involving the meaning thereof. See Revised Code of American Samoa, § 3.1801; *Golden v. Zwickler*, 394 U.S. 103 (1969); *United Public Workers v. Mitchell*, 330 U.S. 75 (1947). Since the county chief's functions in conducting the meeting of the county council and certifying the suc-

---

[9] See, e.g., *Falls Industries, Inc. v. Consolidated Chemical Industries, Inc.*, 258 F.2d 277 (5th Cir. 1958); *United States v. White County Bridge Commission*, 275 F.2d 529 (7th Cir. 1960); Cf. *Patu v. Uhrle*, Civ. 2299 (1972).

cessful candidate involve "no discretion whatsoever" and are "purely . . . ministerial", *Faliu v. Fofo*, supra, a mandatory injunction will lie to compel proper performance of these duties. See *Patu v. Uhrle*, supra; *Sleeth v. Dairy Products Company of Uniontown*, 228 F.2d 165 (4th Cir. 1955), cert. denied, 352 U.S. 966 (1956).

The questions presented here are not "political," but judicial. "The mere fact that the suit seeks protection of a political right does not mean it presents a political question." *Baker v. Carr*, supra at 681. Chief Justice Warren, writing for the Court in *Powell v. McCormack*, delineated the formulations found in the analysis of cases involving potential "political questions." Id. at 518–519. Brevity compels us to forego that listing. However, the primary consideration here is whether Art. II, § 22,[10] is a "textually demonstrated constitutional commitment" to the Senate of the "adjudicatory power" to determine the issues now before us. We think not. The Court in *Powell*, presented with a similar statute,[11] concluded that the statute merely provides that Congress is the judge of whether its members meet the qualifications set forth specifically in the Constitution. In the Constitution of American Samoa, these qualifications are set forth in Art. II, § 3.[12] Additionally, the Senate is the judge when "all that is at stake is a determination of which candidates attracted a greater number of lawful ballots." *Roudebush v. Hartke*, 405 U.S. 15, 31

---

[10] "QUALIFICATIONS AND OFFICERS: Each House . . . shall be the judge of the elections, returns, and qualifications of its own members. . . ."

[11] U.S. Const. Art. 1, § 5.

[12] "QUALIFICATION OF MEMBERS:

A Senator shall—

(a) be a United States National;
(b) be at least 30 years of age at the time of his election;
(c) have lived in American Samoa at least 5 years and have been a bona fide resident thereof for at least 1 year next preceding his election; and
(d) be the registered matai of a Samoan family who fulfills his obligations as required by Samoan custom in the county from which he is elected."

L.Ed.2d 1, 15 (1972) (Douglas, J., concurring and dissenting).[13] The issues of what need be done for the selection of a senator to conform to Art. II, § 4, and whether those requirements were met in the matter at bar are matters of constitutional interpretation. Such a determination falls within the traditional role accorded courts to interpret the law, and does not encroach on the Senate's power to judge specific qualifications or determine plurality of votes. The Court, in ordering Respondent to gear his procedures to conform with Art. II, § 4, is simply compelling this administrator to conform his ministerial actions to constitutional dictates which it, as constitutional interpreter, has translated. After these ministerial acts are performed, it is then up to the Senate to rule on any objections to the enumerated qualifications of the candidate so certified by the county chief, including whether he obtained a plurality of votes.

Briefly, the absence of the other formulations articulated in *Powell* favor justiciability in the case at bar. Insofar as the resolution here involves constitutional interpretation, and not an expression of our own opinion, it does not present a "potentially embarrassing confrontation between coordinate branches." 395 U.S. at 549. The fact that this Court's construction may conflict with the construction given by the Senate does not justify us in avoiding our constitutional responsibility. *United States v. Brown*, 381 U.S. 437 (1965); *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579 (1952) (Frankfurter, J., concurring).

■ Art. II, § 4, literally requires that Senators "*be elected*" by the county councils, and that election is to accord with Samoan custom. "Election is defined as a choice or selection by a body of electors. *Board of Educa-*

---

[13] *Faliu v. Fono*, supra, is not to the contrary, in that the Court only ordered a certain candidate certified by the County Chief; it did not order the Senate to seat that candidate.

*tion of Boyle County v. McChesney*, 235 Ky. 692, 32 S.W.2d 26 (1930); see also *Black's Law Dictionary*, 609 (Rev. 4th Ed. 1968). In this context, that body of electors is the county councils. Under no reasonable interpretation can it be said that Art. II, § 4, permits appointment of a senator, for "appointment" connotes a "choice or selection by an individual." Id. at 27. Thus, the choice of senator, lies solely with the county council. Admittedly, by Samoan custom or personal prestige, some matais and Government officials wield great power in the various counties; however, in the election of a senator, this power must be exercised indirectly through the county councils by influence and persuasion, not through the medium of personal appointments, whether that person be county chief, district governor, or governor. In *Faliu v. Fofo*, supra, we decided that a county chief had no discretion to inject his own selection as senator, and we required him to certify the selection of the county council. Moreover, Art. II, § 22, supports this interpretation, for it empowers the Senate to judge the "elections . . . of its own members(,)" without reference to any form of appointment thereof. If the council succumbs to the influence and bidding of a certain chief and decides accordingly, it is a valid exercise of suffrage, for the decision, albeit tainted, is still that of the authorized electoral body. The manner of this election is determined by Samoan custom of the various counties e.g., voice vote, written ballot, computation of number of speakers for each candidate, and consensual agreement. Samoan custom in this context does not transform election into appointment, for that would run afoul of the Constitution.

 The evidence before us is incomplete, vague, and contradictory. Both Petitioner and Noa Lafi claim majority support in the County Council; however, the evidence submitted is based on hearsay and merits little, if any, weight. Hearsay evidence is evidence of a statement that

781

was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated. E.g., Cal. Evid. Code § 1200(b); *United States v. Williamson*, 450 F.2d 585 (5th Cir. 1971); *United States v. Butler*, 446 F.2d 975 (10th Cir. 1971). Both parties attempted to substantiate plurality of support by submitting their own testimony, and that of other witnesses, to statements made out of court by a substantial number of other matais as to support of a particular candidate. This testimony, unless covered by an exception, is barred from consideration by this Court by the hearsay rule and, therefore, fails to substantiate those allegations for which it was offered. Similarly, both parties attempted to prove various agreements and statements, including statements of Paramount Chief Tuitele, allegedly made during this dispute; however, in most cases, the makers thereof, including Chief Tuitele, were not brought before the Court to testify. Since the only evidence thereon was testimony of third persons as to out of court statements, the Court finds that evidence likewise insufficient to prove these agreements and statements, including those of Chief Tuitele, were in fact made.

We find from the evidence before us that the County Council has not chosen, under any view of Samoan custom, the Senator from Lealataua County for this term. The numerous meetings have been unavailing; no action conducted therein can be deemed an election under any stretch of the term. The certification by Respondent was that of his own, individual selection, which, as we pointed out earlier, patently runs afoul of Art. II, § 4. The submission of both names, although uncertified, to the Senate for election likewise collides with the Constitutional mandate of Art. II, § 4. Accordingly, we must remand the election of this senatorial seat to the County Council

through a grant of injunctive relief, thereby assuring that the selection thereof conforms to the Constitution.

█ In light of the numerous failures to elect a Senator according to Samoan custom and the division and intempererance created thereby, this Court, in order to insure compliance with Art. II, § 4, and to protect against further strife, must enjoin this election to be conducted according to strict procedures and under the supervision of a neutral official. We find this distasteful. We prefer that these matters be settled by the county councils according to the prevailing custom without litigation. When the Court is compelled to intervene, as in this proceeding, county harmony is dashed and disunity further fueled. It can only be said that the election of a senator in this situation is a pyrrhic victory.

Testimony was presented, and we so credit, that verbal agreement between the matais of a county council to alternate the senate seat between traditional divisions of a county is Samoan custom in a number of counties. As such, we find such agreements in compliance with Art. II, § 4, and enforceable. We, therefore, hold that the Senator of Lealataua for this term must be a matai from Samatua. The election thereof, however, must be by all the matais of the County Council, irrespective of which division they represent. Art. II, § 4, does not permit election by any less electoral body than the entire county council, nor do we find such in Samoan custom. Accordingly, matais from Tapua'iga may cast votes in this election.

In light of the foregoing, WE HEREBY ORDER AND ENJOIN AS FOLLOWS:

1. That respondent shall conduct an election for the position of Senator from Lealataua County, twelfth Senatorial District, on Saturday, February 3, 1973, commencing at 9:00 A.M. and ending at 1:00 P.M., in the village of Amanave at the house of the pulenuu thereof, Vaielua;

2. That said election shall be by secret ballot;

3. That Respondent shall give notice of the time and place of said election by radio or television at least once per day for three days prior to said election;

4. That all members of the County Council holding matai titles from Lealataua County, including those of Tapua'iga District, which are registered in the records of the Territorial Registrar, (a certified copy of those records is incorporated as part of this order and appended hereto as Appendix A) are eligible to cast one vote each in said election;

5. That all votes shall be cast in person at the polling location by the person eligible to cast said vote during the time period prescribed for said election;

6. That any votes cast in violation of this order shall be automatically voided, and disregarded in computing the results of said election;

7. That the candidate from the Samatua Division with the largest number of votes cast in his favor shall be declared the duly elected Senator of Lealataua County and certified as such;

8. That Palauni Tuiasosopo shall be supervisor of said election; that he shall be authorized to make all arrangements for the proper operation of said election, including, but not limited to, the procurement of ballots and a ballot box; that he shall be authorized to be physically present at the polling location during said election; that he shall be authorized to count all ballots and tally the totals thereof; that he shall be authorized to direct Respondent to certify to the Election Commissioner the name of the candidate elected according to the terms of this order as the duly elected Senator of Lealataua County; and that he shall be authorized to perform any other actions which are reasonable and necessary to enforce compliance with the terms of this order; and

9. That Respondent shall certify to the Election Commissioner as directed by Palauni Tuiasosopo.

Dated this 29th day of January, 1973.